### Richmond

JOHN RIDDICK

V.

COMMONWEALTH OF VIRGINIA

October 14, 1983.

Record No. 820999.

Present: Carrico, C.J., Cochran, Compton, Stephenson, Russell, and Thomas, JJ., and Gordon, Retired Justice.

*Sterling H. Weaver, Sr.,* for appellant.
*Robert H. Anderson, III, Assistant Attorney General (Gerald L. Baliles, Attorney General,* on brief), for appellee.

COMPTON, J., delivered the opinion of the Court.

In this criminal case, an innocent bystander was killed at the scene of a gun battle. The dispositive question on appeal is whether the evidence is sufficient to convict the defendant of the homicide. It is, and we affirm.

Charged with murder of Barry N. Tapp and with using a firearm in the commission of murder, defendant John Riddick was convicted in a jury trial of murder of the second degree and of the firearm offense. In accordance with the verdict, the trial court sentenced Riddick to 20 years in the penitentiary for the murder, and to a one-year term on the other charge. In awarding defendant an appeal from the March 1982 judgment of conviction, we limited the issues to consideration of the sufficiency question and to whether the jury was misdirected.

According to settled principles, we will view the conflicting evidence in the light most favorable to the Commonwealth. On February 26, 1981, about 4:00 p.m., Rudolfo "Danny" Matarita and Barry "Chilly Bear" Tapp were standing with other individuals in a residential parking area near Project Drive in Portsmouth. The group was near a trash "dumpster" that was enclosed on three sides by a wall. An automobile on Project Drive approached the group. The vehicle was operated by Lorenzo Butts. Defendant Riddick occupied the right front seat. Vincent Springs was in the back seat.

The vehicle stopped near Matarita and Tapp. Butts said to defendant, "There go Danny. You can get him now." The group scattered as defendant and Butts left the vehicle, running toward Matarita. Defendant was brandishing a .357 Magnum revolver. Defendant fired about four shots at Matarita and said, "Get his ass." Defendant apparently exhausted his ammunition and asked Butts for assistance. Matarita, who was also armed with the same type gun, retreated behind the wall and began firing at Butts and defendant. Butts then fired about five shots toward Matarita, using what appeared to be a .38 caliber revolver. Matarita was able to escape his attackers and leave the scene. Defendant then obtained a shotgun from Springs and unsuccessfully searched for Matarita.

At some point during the gun battle, Tapp, also armed but a nonparticipant in the melee, was mortally wounded. A gunshot wound to the groin caused his death. Subsequent analysis of a deformed bullet core recovered from Tapp's body revealed only that it was fired from either a .38 caliber, a .357 Magnum, or 9 milli-

meter revolver. The bullet was not linked to any specific weapon. The evidence does not establish precisely who fired the fatal shot.

The record shows that the victim was never in front of Matarita after defendant and Butts began shooting at Matarita but was always moving "[t]owards the back." An eyewitness testified that Tapp "was standing behind Danny" when Matarita was shooting.

The prosecutor presented evidence of previous animosity between Matarita and Butts, and between Matarita and defendant. Riddick had failed to repay Matarita for a loan and became upset at Matarita's collection efforts; Matarita had a prior relationship with Butts' estranged wife. About a month before the gun fight, defendant and Butts had threatened Matarita. After the threat, Matarita began carrying a concealed weapon for self-protection.

On appeal, defendant contends the evidence is insufficient to convict of second-degree murder because "the Commonwealth has not proven who committed the act that killed the deceased." Defendant notes the Commonwealth failed to prove who actually fired the shot that killed Tapp and that there was no evidence to show the bullet removed from Tapp's body "came from any of the guns that were fired by the people engaged in the shooting." He argues it is just as likely that a bullet from Matarita's gun killed Tapp, either as the result of a direct hit or a ricochet.

Defendant urges that the theory of transferred intent is inapplicable because, in order for that doctrine to apply, the prosecutor "must first prove that the defendant committed the act that caused the death of the deceased while he was in the process of committing an act against someone else." He contends that the trial judge proceeded on the erroneous theory that the intent of anyone who was engaged in the shootout could be transferred, thus making any participant guilty in the death of a bystander. That incorrect idea, he says, prevents determination of an essential element of murder of the second degree, the intent of the person who actually committed the homicide.

Noting the conflicting testimony, defendant points out, relying in part on facts obviously rejected by the jury, that he claimed he was not the aggressor but shot in self-defense, that Butts never became involved in the shooting until asked to come to the aid of Riddick, and that Matarita asserted self-defense. Under those circumstances, defendant maintains, "there is no way to determine" the actual intent of the criminal agent or to ascertain that the act was with malice, when the assailant cannot be identified. Conse-

quently, defendant argues, the homicide case should have been submitted to the jury for consideration of an offense no greater than voluntary manslaughter. We do not agree.

The jury verdict has established the following significant facts: defendant and Butts, acting in concert because of animus toward Matarita, provoked the gun battle, intending to kill him; Matarita acted in self-defense, in a legitimate effort to repel the attack; the victim was not killed by a bullet from Matarita's gun because Tapp was always behind Matarita while Matarita was shooting, and the ricochet theory is based upon pure speculation; and, most importantly, Tapp was killed by a shot fired by either defendant or Butts. Under these circumstances, defendant's second-degree murder conviction was proper.

Here, whether defendant or Butts actually fired the shot that killed the victim is unimportant. If defendant fired the fatal shot, the doctrine of transferred intent applies. Under this concept, if an accused shoots at another intending to kill him, and a third person is killed because of the act, that same intent follows the bullet and is transferred to the killing of the third person, even if such death was accidental or unintentional. *Jones v. Commonwealth,* 217 Va. 231, 236, 228 S.E.2d 127, 130 (1976); *Williams v. Commonwealth,* 128 Va. 698, 717, 104 S.E. 853, 859 (1920). Thus, if Riddick was the slayer, Riddick's intent to kill Matarita was transferred to the slaying of Tapp and defendant's conviction is valid.

If, however, Butts fired the fatal shot, defendant's conviction is still valid. As we have said, the evidence establishes Riddick and Butts were acting in concert. Butts intended to kill Matarita, and that intent was transferred to the slaying of Tapp. Due to the concert of action, defendant is deemed to have shared Butts' intent. *Epps v. Commonwealth,* 216 Va. 150, 156, 216 S.E.2d 64, 69 (1975). Thus, even if Butts killed the victim, defendant was criminally responsible for the acts of the gunman, Butts, as a principal in the second degree. *Jefferson v. Commonwealth,* 214 Va. 747, 751-52, 204 S.E.2d 258, 262 (1974); *Spradlin v. Commonwealth,* 195 Va. 523, 79 S.E.2d 443 (1954). And every principal in the second degree may be indicted, tried, convicted, and punished, with certain exceptions not applicable here, as if a principal in the first degree. Code § 18.2-18.

The conclusions we have just reached dispose of defendant's challenges to the instructions given and refused. The argument

that the trial court misdirected the jury mainly stems from defendant's erroneous contention that the Commonwealth was required to establish precisely who fired the fatal shot. We will, however, discuss one instruction because of defendant's emphasis on it.

The trial court granted Instruction 8 as follows, over defendant's objection.

> "If you believe from the evidence that two or more men were shooting guns in mutual combat with the intent to kill and as a result of these shootings the deceased, an innocent bystander, was killed, then each is responsible for the death the same as if he had killed the person he intended to kill, unless he was acting in self defense."

We focus on defendant's objections made at trial because his argument on appeal is slightly different. *See* Rule 5:21. At trial, defense counsel said: "I would object to Instruction Number 8 in that in the first place the Court is deciding as a matter of law that if these two people were engaged in mutual combat it was with the intent to kill." Counsel maintained the evidence showed "that either one intended to defend himself against the other."

We hold the court below properly overruled that objection and did not remove a critical factual issue from the jury's consideration. Employing the introductory language "[i]f you believe from the evidence," the trial court clearly permitted the jury to decide whether defendant or Matarita was the aggressor and who acted in self-defense.

Continuing an attack on Instruction 8, defense counsel stated: "My other objection to this is . . . there's no law in Virginia at this time . . . that would say if two or more men were shooting guns in mutual combat and an innocent bystander were killed and the Commonwealth has not shown which person shot the innocent bystander that then each person out there is responsible for the killing. . . ." Without necessarily giving blanket approval to this instruction for use in every case of this type, we conclude the trial court properly rejected defendant's second objection to the instruction, under the facts of this case.

Defendant overlooks the concluding clause, "unless he was acting in self defense." As the Attorney General points out, the instruction merely informed the jury that the party who unlawfully provoked the incident which led to Tapp's slaying was criminally

responsible for the murder, subject to the applicability of the principles of self-defense. If the person committing the homicide acted in self-defense, then he would not be legally responsible for the death. As we have already indicated, the evidence supported a finding that neither Riddick nor Butts acted in self-defense but that they were aggressors. The evidence also supported a finding that Matarita acted in self-defense and that Riddick or Butts fired the fatal shot. Thus, under this evidence the instruction was proper.

For these reasons, the judgment of conviction will be

*Affirmed.*