## Richmond

### STANLEY MICHAEL CARTER

v.

### COMMONWEALTH OF VIRGINIA

No. 1634-91-2

Decided March 16, 1993

COUNSEL

Bruce M. Steen (J. Lloyd Snook, III; McGuire, Woods, Battle & Boothe; Snook & Haughey, on briefs), for appellant.

Thomas C. Daniel, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

OPINION

## I.

**FITZPATRICK, J.**—Appellant, Stanley Michael Carter, was convicted by a jury of: (1) robbery in violation of Code § 18.2-58; (2) forcible sodomy in violation of Code § 18.2-67.1; (3) statutory burglary in violation of Code § 18.2-90; and (4) three counts of rape in violation of Code § 18.2-61.[1] Appellant argues that the trial court erred by overruling his *Batson*-based constitutional challenge to the Commonwealth's selection of the petit jury, and that the trial court erred by submitting to the jury three separate rape indictments where the facts established that the three acts of forcible intercourse took place at the same location and with the same victim within a three-hour time period. We disagree and affirm his convictions.

## II. JURY SELECTION — *BATSON* CHALLENGE

Appellant's trial counsel asked potential jurors whether the respective races of the complaining witness (who is white) and appellant (who is African-American) would affect their ability to render a fair and impartial verdict. Each member of the jury panel answered these questions in the negative. After voir dire, counsel made their peremptory strikes. The Commonwealth's attorney used three of his four peremptory challenges to strike African-Americans from the panel. Appellant's counsel objected to the Commonwealth's use of its peremptory challenges to strike the three African-Americans (Blakey, Childress and Jones), contending that the strikes violated the constitutional standard established in *Batson v. Kentucky,* 476 U.S. 79 (1986).

---

[1] Appellant was initially charged with a single count of rape. After that charge was certified by the general district court, the Commonwealth sought two additional separate direct indictments for rape arising out of the same incident. In addition to the convictions cited, appellant was charged with abduction. This charge was dismissed at the end of all the evidence, as the trial court found that it was part of the rape charges.

Three African-Americans remained on the jury panel.[2] Upon hearing the objection, the trial judge asked the Commonwealth's attorney to state his reasons for the strikes.

The Commonwealth responded:

Judge, with Ms. Blakey, she lives, according to the jury list, at 900 South First Street. We have evidence that the defendant was at least staying at 900 or 90 South First Street. . . . The second reason is I am quite confident that we have prosecuted some of Ms. Blakey's relatives, they may not be her close relatives, but at least in the range of cousins, for some crimes.

With Gregory Childress, . . . we have recently, last term of jury, prosecuted one of his co-workers, the case of *Commonwealth v. Sylvester Bright.* There is another reason, Lieutenant Jones . . . knows Gregory Childress and he told me that we would not want him on the jury, period, and I respect Lieutenant Jones' opinion very much. He himself happens to be black, for whatever that's worth. . . . He did not give a reason. He just said, we don't want him on the jury, and I have respect for his opinion. That coupled with the fact that we have recently prosecuted one of his co-workers.

With Charles E. Jones . . . he has been prosecuted by our office for assault and battery and also Lieutenant Jones said we do not want him on the jury, and I respect Lieutenant Jones' opinion. That's the reason, at least two reasons with each of those people. That has nothing to do with their race.

The trial judge overruled appellant's motion to deny the strikes or to continue the case until a new jury could be impanelled. The judge explained his ruling as follows:

As I understand the Supreme Court's decision, the defendant is entitled to raise the issue, the Commonwealth then has the burden to articulate the reason, or justification, that is neutral. The Commonwealth, I think, has met its burden and then the burden

---

[2] As we explained in *Jackson v. Commonwealth,* 8 Va. App. 176, 380 S.E.2d 1, *aff'd per curiam en banc,* 9 Va. App. 169, 384 S.E.2d 343 (1989), "the mere inclusion of [African-Americans] on a jury does not automatically preclude a finding of a *prima facie* case, especially where other facts and circumstances give rise to an inference of prosecutorial discrimination." *Id.* at 183, 380 S.E.2d at 5 (citing *United States v. Clemons,* 843 F.2d 741, 748 (3d Cir.), *cert. denied,* 488 U.S. 835 (1988)).

shifts to the defendant to show that is a pretext. I am somewhat concerned that given the number of available strikes, seventy-five percent were directed to black members of the jury. I, however, understand, based on the Supreme Court's decision, that once a legitimate reason is articulated I am bound, unless there is something more by way of evidence to show that there is a mere pretext to deny the defendant's motion.

To me it's a close question when there are available four strikes to the Commonwealth and three of the four strikes exercised are of the black race, however, if I understand the cases correctly they require something more. I admit it is close but at least in my understanding of the Supreme Court's ruling I am going to deny the defendant's motion.

Appellant objected to the judge's ruling, arguing that the Commonwealth's explanations were a mere pretext. This issue was properly preserved for appeal. The jury was sworn and the trial of the case proceeded.

On appeal, appellant argues that his equal protection rights were violated by the prosecutor's use of peremptory challenges to strike persons of appellant's race from the petit jury. We disagree.

The principle that the Equal Protection Clause of the fourteenth amendment precludes a prosecutor from excluding otherwise qualified and unbiased persons from the jury solely on the basis of their race is a well-established part of our constitutional jurisprudence. *See Powers v. Ohio*, 499 U.S. 400, 409 (1991); *Batson*, 476 U.S. at 89; *Swain v. Alabama*, 380 U.S. 202, 203-05 (1965).[3] A prosecutor violates a defendant's equal protection rights by using peremptory challenges in a racially discriminatory manner. In such cases, the initial burden is on the defendant to establish a *prima facie* case of purposeful or deliberate discrimination. A defendant "may establish a prima facie case of purposeful discrimination in selection of the petit jury

---

[3] Racial discrimination in the jury selection process is also prohibited under federal law pursuant to the Civil Rights Act of 1875. 18 U.S.C. § 243 provides, in pertinent part:

No citizen possessing all other qualifications which are or may be prescribed by law shall be disqualified for service as grand or petit juror in any court of the United States or of any State on account of race, color, or previous condition of servitude.

solely on evidence concerning the prosecutor's exercise of peremptory challenges at the defendant's trial." *Batson*, 476 U.S. at 96.[4]

To establish a *prima facie* case:

> [T]he defendant first must show that he is a member of a cognizable racial group, and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race. Second, the defendant is entitled to rely on the fact, as to which there can be no dispute, that peremptory challenges constitute a jury selection practice that permits "those to discriminate who are of a mind to discriminate." Finally, the defendant must show that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race.
>
> . . .
>
> Once the defendant makes a prima facie showing, the burden shifts to the State to come forward with a neutral explanation for challenging black jurors. . . . [T]he prosecutor's explanation need not rise to the level justifying exercise of a challenge for cause. But the prosecutor may not rebut the defendant's prima facie case of discrimination by stating merely that he challenged jurors of the defendant's race on the assumption — or his intuitive judgment — that they would be partial to the defendant because of their shared race. . . . Nor may the prosecutor rebut the defendant's case merely by denying that he had a discriminatory motive or "affirm[ing] [his] good faith in making individual selections." . . . The prosecutor therefore must articulate a neutral explanation related to the particular case to be tried. The trial court then will have the duty to determine if the defendant has established purposeful discrimination.

*Id.* at 96-98 (citations and footnotes omitted).

"Since the trial judge's findings in the context under consideration here largely will turn on evaluation of credibility, a reviewing court ordinarily should give those findings great deference." *Id.* at 98 n.21; *accord Hernandez v. New York*, 500 U.S. 352, 364 (1991);

---

4  Racial identity between the defendant and the excused person "is irrelevant to a defendant's standing to object to the discriminatory use of peremptory challenges." *Powers*, 499 U.S. at 416.

*Winfield v. Commonwealth*, 14 Va. App. 1049, 1049, 421 S.E.2d 468, 469 (1992) (en banc). "A trial court, unlike an appellate court, has the opportunity to see and hear the actors. Consequently, we consistently have given deference to a trial court's *findings* during jury *voir dire*, and we will not disturb those findings on appeal absent a showing of manifest error or abuse of discretion." *Faison v. Hudson*, 243 Va. 397, 402, 417 S.E.2d 305, 308 (1992) (emphasis added).

■ At the conclusion of every *Batson* challenge, the trial judge has the "duty to determine if the defendant has established purposeful discrimination." *Batson*, 476 U.S. at 98.[5] It would be helpful for appellate review if the trial judge made specific findings on the record as to: (1) whether the defendant has established a *prima facie* case of purposeful discrimination; (2) whether the Commonwealth's race-neutral explanation in support of its decision to strike is credible, relates to the parties and case before the court and is sufficient to rebut the defendant's *prima facie* case; and, if so, (3) why the defendant has not met his or her subsequent burden of showing that the explanations are a mere pretext.

Although the trial judge did not make the specific finding that appellant made out a *prima facie* case of purposeful discrimination, he did require the Commonwealth to provide race-neutral explanations for the use of the peremptory strikes. Therefore, by implication, the trial judge must have found that the appellant had met his initial burden. The Commonwealth explained the strike of Ms. Blakey on the basis that she lives on the same street as appellant and possibly in the same block. In addition, the Commonwealth was confident that their office had prosecuted some of Ms. Blakey's relatives. Nothing in the record indicates that these explanations were a mere pretext. We find that these reasons are sufficiently race-neutral and, therefore, the trial judge did not err in denying appellant's *Batson* challenge as to this juror.

---

[5] We stress the necessity of making a complete record for review. "[C]onsiderations of judicial economy require a record of all the evidence bearing on the issue of alleged discrimination." *Ex parte State*, 627 So. 2d. 1013, 1015, (Ala. 1992). A trial court's finding that no *prima facie* case has been made cannot operate to short-circuit appellate inquiry into a *Batson* claim. *Id.* Our review, whether the Commonwealth's explanations are offered as rebuttal to a *prima facie* case or as a proffer where no *prima facie* case has been found, is not "restricted by the mutable and often overlapping boundaries inherent within a *Batson*-analysis framework, but, rather, shall focus solely upon the 'propriety of the ultimate finding of discrimination *vel non*.'" *Id.* at 1016 (quoting *United States v. Forbes*, 816 F.2d 1006, 1010 (5th Cir. 1987)).

■ The Commonwealth explained the strike of Mr. Childress on the basis that the Commonwealth had recently prosecuted one of his co-workers. In addition, a police officer involved in the case knew Mr. Childress and informed the Commonwealth attorney that "we don't want him on the jury." As to the latter explanation, we held in *Langhorne v. Commonwealth*, 13 Va. App. 97, 409 S.E.2d 476 (1991), that "[t]rial judges must scrutinize such nebulous explanations to be satisfied that the prosecutor is not using the stated reason as a subterfuge to deny an accused a jury comprised of a racially balanced cross-section of the community." *Id.* at 107-08, 409 S.E.2d at 483.

In this case, the Commonwealth attorney stated that the police officer "did not give a reason. He just said, we don't want [Mr. Childress] on the jury." We hold that it is unacceptable for the Commonwealth to delegate its decision making process in the exercise of peremptory challenges. Our holding prevents a Commonwealth attorney from relying solely on the remarks of another, who may not have a race-neutral reason for such advice and who may not be immediately available for questioning by the trial court. However, because we conclude that the Commonwealth's first basis was sufficiently race-neutral we need not address the issue of whether the trial judge erred in not probing further the reasons for the police officer's remarks.

The Commonwealth explained the strike of Mr. Jones on the basis that he was prosecuted by the Commonwealth attorney's office for assault and battery. In addition, the same police officer that recognized Mr. Childress also indicated to the Commonwealth's attorney that Mr. Jones should not be seated as a juror. We conclude that the Commonwealth's concern with a potential juror who had previously been prosecuted by their office for assault and battery was a sufficient race-neutral explanation for the use of the peremptory strike. Accordingly, we find no reversible error in the trial judge's overruling of appellant's *Batson* challenge.

## III. THE INCIDENT

In the early morning hours of September 26, 1990, appellant broke into an occupied house on Gordon Avenue in the City of Charlottesville. The victim was one of five University of Virginia female students who lived together in the residence. Each of the women had separate bedrooms. Around 2:00 a.m., the victim awoke in her bedroom and saw appellant standing next to her bed removing his pants. He placed a knife at her neck, told her to be quiet and not to move or he would hurt her. He then crawled into the victim's bed, disrobed her and raped her while holding a knife at her neck.

After approximately thirty to forty-five minutes of sexual intercourse, the victim told appellant that she had to go to the bathroom as a ploy to get him off her and in the hopes that she could "walk down the hallway and make it into [her housemate's] room." She told appellant that if he did not let her "go to the bathroom [she] was going to go on him, on the sheets and on the bed and make a mess." At that point appellant got up, allowed the victim to get up and led her, with the knife on her neck, down the hall to the bathroom. They both entered the bathroom and appellant continued to hold the knife no more than one foot away from the victim while she used the toilet.

Appellant then forced the victim, at knife point, to return to her bedroom where he instructed her to get back into bed. Appellant again engaged in non-consensual sexual intercourse. This episode of intercourse lasted approximately fifteen to twenty minutes. Thereafter, appellant forced the victim to commit sodomy by performing fellatio.

Appellant told the victim that he would leave after she fell asleep. She then pretended to sleep; however, after ten minutes appellant continued to talk to her and they then had a "pretty long conversation." Thereafter, appellant crawled back on top of the victim and forced sexual intercourse for a third time. This episode did not last as long as the first two periods of sexual intercourse, and ended when the victim feigned serious illness and appellant decided to leave.

Before leaving, however, he forced the victim to write a check payable to him in the amount of $100. He threatened to hurt her if she "followed up" on the check. Appellant was apprehended by the police shortly after he fled the residence at about 4:30 a.m. The police brought appellant back to the Gordon Avenue address, where he was positively identified by the victim. On his person was a steak knife

and the victim's $100 check. The entire incident extended from 2:00 a.m. to approximately 4:15 a.m.

## IV. MULTIPLE COUNTS OF RAPE

Appellant argues that the three acts of non-consensual intercourse at issue constituted a single criminal offense and, therefore, his three convictions for rape violated the constitutional proscription against double jeopardy. We disagree.

Rape is defined as "sexual intercourse with a complaining witness . . . against the complaining witness's will, by force, threat or intimidation." Code § 18.2-61(A). "To prove that sexual intercourse occurred, the evidence must establish that 'there has been an actual penetration to some extent of the male sexual organ into the female sexual organ.'" *Spencer v. Commonwealth*, 238 Va. 275, 283, 384 S.E.2d 775, 779 (1989), *cert. denied*, 493 U.S. 1036 (1990) (quoting *Tuggle v. Commonwealth*, 228 Va. 493, 510, 323 S.E.2d 539, 549 (1984), *vacated and remanded on other grounds*, 471 U.S. 1096, *aff'd on remand*, 230 Va. 99, 334 S.E.2d 838 (1985), *cert. denied*, 478 U.S. 1010 (1986)).

The moment that a complaining witness is forced, threatened or intimidated into having non-consensual sexual intercourse and penile penetration into the vagina has occurred, the crime of rape has been committed. *See id.* When a defendant is charged with multiple rapes against the same victim, the fact finder must determine when one rape has been completed and another rape committed *vel non*.[6] We find no controlling authority for appellant's assertion that the crime of rape, under the facts of this case, should be viewed as one continuous course of criminal conduct. To the contrary, "[g]enerally rape is not a continuous offense, but each act of intercourse constitutes a distinct and separate offense." *State v. Midyette*, 87 N.C. App. 199, 202, 360 S.E.2d 507, 508, *review denied*, 321 N.C. 299, 362 S.E.2d 785 (1987), *aff'd per curiam*, 322 N.C. 108, 366 S.E.2d 440 (1988) (quoting *State v. Dudley*, 319 N.C. 656, 659, 356 S.E.2d 361, 363 (1987)); *see also, e.g., Lawson v. Commonwealth*, 13 Va. App. 109, 110-11, 409 S.E.2d 466, 466-67 (1991) (two convictions for rape affirmed where defendant raped victim at knife point, had oral sex, then repenetrated her

---

[6] At oral argument before us, appellant's counsel noted that the jury was not specifically instructed on the issue of determining at what point one rape was completed and the next rape began. We decline to comment on the accuracy or consider the merits of this argument because defense counsel failed to object to the trial court's instruction of the jury. Rule 5A:18.

vagina); *In re McGrew*, 66 Cal. 2d 685, 687-88, 427 P.2d 161, 162, 58 Cal. Rptr. 561, 562 (1967) (separate convictions for one oral copulation and two rapes, apparently committed in uninterrupted succession, affirmed with sentence modified); *Harrell v. State*, 88 Wis. 2d 546, 553, 277 N.W.2d 462, 464 (1979) (two convictions of rape affirmed where evidence showed defendant raped victim at gun point, then after brief conversation raped victim again at gunpoint); *State v. Hodge*, No. 91, 1991 WL 28952, at * 1 (Tenn. Crim. App. Mar. 5, 1991) *appeal denied*, July 1, 1991 (defendant's conviction for two counts of aggravated rape affirmed where victim was bound to bedposts, blindfolded and raped, defendant then left bedroom for a few minutes, returned, and raped victim again); *State v. Richmond*, 250 Kan. 375, 378, 827 P.2d 743, 745 (1992) (affirming defendant's two rape convictions as not multiplicitous where victim was raped, then tied up while defendant left the room, and then untied and raped again all within a one-hour time span).

"To the victim, each rape was 'readily divisible and intensely personal; each offense is an offense against a person.' " *People v. Segara*, 126 Ill. 2d 70, 77, 533 N.E.2d 802, 805 (1988) (emphasis omitted) (quoting *Pruitt v. State*, 269 Ind. 559, 565, 382 N.E.2d 150, 154 (1978)). Given the nature of this kind of offense, there is good reason to avoid giving a defendant a "free rape" merely because he chooses to repeat his crime on the same victim within a short period of time. *See United States v. Sneezer*, 983 F.2d 920, 925 (9th Cir. 1992).

Appellant concedes that a defendant may be convicted of both forcible sodomy and rape from conduct against a single victim within a short period of time. However, in asserting that he should have been convicted of only one count of rape, he argues that he is not more culpable, merely because he complied with the victim's request to go to the bathroom, than a rapist who is able to maintain an initial penetration. We disagree with this contention. "To adopt such an approach would mean that 'once a [defendant] has committed one particular sexual crime against a victim he may thereafter with impunity repeat his offense,' so long as he does not direct attention to another place on the victim's body, or significantly delay in between each offense." *People v. Harrison*, 48 Cal. 3d 321, 337, 768 P.2d 1078, 1088, 256 Cal. Rptr. 401, 411 (1989). We find "no legal or logical bar to separate punishment where, as here, each of the [appellant's] 'repenetrations' was clearly volitional, criminal and occasioned by separate acts

of force." *Id.* at 338, 768 P.2d at 1088, 256 Cal. Rptr. at 411 (emphasis omitted). Appellant "should . . . not be rewarded where, instead of taking advantage of an opportunity to walk away from the victim, he voluntarily resumed his sexually assaultive behavior." *Id.*

■ "On appeal, we review the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom. The jury's verdict will not be disturbed on appeal unless it is plainly wrong or without evidence to support it." *Maynard v. Commonwealth*, 11 Va. App. 437, 439, 399 S.E.2d 635, 637 (1990) (en banc) (citations omitted); *see also Mundy v. Commonwealth*, 11 Va. App. 461, 477, 390 S.E.2d 525, 534, *aff'd en banc*, 399 S.E.2d 29 (Va. App. 1990), *cert. denied*, (1991). The jury was entitled to consider all the evidence in determining whether the Commonwealth had proved all the elements for each charge of rape. Other states, in determining whether the conduct constituted a single offense or multiple offenses, have focused on factors such as the: nature of the act or acts; time; place; intent; possibility of cumulative punishment; and number of victims. *See Harrell*, 88 Wis. 2d at 572, 277 N.W.2d at 472-74. We agree that these factors are relevant. This list, however, is not exhaustive and the jury may properly consider the victim's subjective understanding of the circumstances, along with all the other evidence presented, in making this critical determination.

We agree with the trial judge's memorandum opinion holding that the evidence supports the jury's finding that appellant was guilty of three separate acts of rape. The trial judge accurately summarized the evidence from which the jury found three separate rapes had occurred as follows:

> The victim's testimony was that although she was in great fear during the two hours she was with the defendant, the evidence supports the fact that she was placed in fear not just continuously, but repeatedly and through separate actions of the defendant. When he raped her the first time, he had the knife at her throat. The second rape occurred after he had taken the victim down the hall to the bathroom, returned, told her to get on the bed and to turn over. The third rape occurred after the act of sodomy and after he had told her to sleep. Clearly, the evidence supports three separate acts of penetration. The evidence supports that on each occasion it was committed without her consent.

The evidence showed that appellant raped the victim and that during the first episode of sexual intercourse the victim requested to go to the bathroom. Appellant then withdrew, let the victim get up and led her down the hallway at knife point. During this sequence of events, the jury could reasonably conclude that the first rape was complete, because penetration had ceased and appellant's immediate intent and use of force was not to force the victim to engage in sexual intercourse, but, rather, to prevent her from escaping and to avoid his detection in the residence.

Thereafter, he forced the victim to return to the bedroom, get back into her bed and turn over. Appellant then raped the victim again. Appellant then withdrew and committed the separate and distinct crime of forcible sodomy by fellatio. From this evidence, the jury could reasonably conclude that upon appellant's return to the victim's bedroom, he reformulated his intent to rape, and formed a new intent to commit the crime of sodomy. Appellant then told the victim that he would leave after she went to sleep. The victim and appellant then engaged in a long conversation and, in an attempt to get appellant to leave, the victim feigned sleep. However, appellant got back on top of the victim and raped her for a third time. From this evidence, the jury could reasonably conclude that appellant reformulated his intent to rape after having forced the victim to perform fellatio.

"The evidence as to each separate act of forcible intercourse was complete and sufficient to sustain a conviction of . . . rape without resort to the evidence necessary to prove either of the other rape charges." *Midyette*, 87 N.C. App. at 202, 360 S.E.2d at 509. Accordingly, "each of the three acts of forcible vaginal intercourse with the victim was a separate rape and [appellant] was properly convicted and sentenced for all three offenses." *Id.*

Upon consideration of all the evidence in the record, we find that the jury's conclusion that the Commonwealth proved beyond a reasonable doubt each and every constituent element of three separate rape offenses is supported by the evidence. In addition, we conclude that the trial judge did not err in overruling appellant's *Batson* challenge to the selection of the petit jury. Accordingly, we affirm the convictions.

*Affirmed.*

Moon, J., and Elder, J., concurred.