OTIS TROY HENDERSON

v.

COMMONWEALTH OF VIRGINIA

No. 1050-92-4

Decided December 7, 1993

---

---

COUNSEL

James O. Broccoletti (William M. McKee; Zoby & Broccoletti, P.C., on briefs), for appellant.

Robert B. Condon, Assistant Attorney General (Stephen D. Rosenthal, Attorney General, on brief), for appellee.

OPINION

**FITZPATRICK, J.**—Otis Troy Henderson (appellant) appeals from his conviction of use of a sawed-off shotgun in the attempted perpetration of murder in violation of Code § 18.2-300. On appeal, he argues that the trial court erred in failing to set aside the jury's verdict as contrary to the law and the evidence. We disagree and affirm the conviction.

Appellant was convicted in a jury trial of attempted murder, possession or use of a sawed-off shotgun in the commission of a violent crime, and conspiracy to commit murder. Appellant appeals only his conviction for possession or use of a sawed-off shotgun.

## BACKGROUND

On July 31, 1991, appellant instigated an altercation with Darnell Chapman (Darnell) in retaliation for Darnell's striking Andrea Tipton (Andrea) during a domestic quarrel the preceding day. During the altercation, appellant was joined by Mark Addison (Addison), who held Darnell while appellant continued to strike him. As Darnell broke away from appellant and Addison, he heard Addison say, "Mike, tell Darnell I'm coming back to get him." On the way back to his residence, Darnell approached Officer Mackey of the Dumfries Police Department and reported the incident.

After the altercation, appellant and Addison returned to appellant's Nissan Maxima and, in the company of Andrea, Rochelle Davis, Rhonda Lopez and Brian Brown (Brown), they went to Potomac Mills Mall. At the mall, appellant and Addison went inside while the others waited in the parking lot. When they returned to the vehicle a short time later, Addison was carrying a small bag containing shotgun shells. Thereafter, the group went to appellant's home.

At appellant's home, the group discussed returning to Williamstown, the area where the fight with Darnell occurred. Appellant, his brother (Lance Henderson), Addison and Brown began talking about shooting Darnell. One of the men suggested that Brown shoot Darnell because Brown did not have any prior convictions. Brown replied: "Yes, I'll do it." During this conversation, a sawed-off shotgun that appellant kept at his home was passed among the men.

Sometime after midnight and shortly after the discussion, the group left appellant's home in two vehicles, appellant's Nissan Maxima and

a Chevrolet Z24, for Williamstown. Before leaving, Addison placed the sawed-off shotgun under the hood of the Chevrolet. Appellant admitted at trial that he knew that the weapon was in the Chevrolet, that it was in fact a sawed-off shotgun and that possession of the weapon was illegal. Appellant, Addison, Rhonda Lopez and Rochelle Davis were in the Maxima. Lance Henderson, Andrea and Brown were in the Chevrolet. At trial, Andrea, a witness for the Commonwealth, testified that the purpose of the trip was to carry out the plan to shoot Darnell and that Brown was the intended trigger-man. Both vehicles were in tandem as the group travelled to Williamstown to locate Darnell. At some point when the vehicles reached the Williamstown area, the Chevrolet stopped, and the driver, Lance Henderson, "walked over to the front of the car, and lifted the hood, and then he got back in the car."

The Maxima turned onto the street where Darnell lived and was immediately pulled over by the police. Officer Mackey, aware of the earlier threat made to Darnell, searched appellant, Addison and the inside of the Maxima for weapons. Finding no weapons, the officers released appellant and his companions, telling them to leave the area. The Chevrolet parked a few blocks away and was not searched.

Addison then drove the Maxima around the corner from Darnell's house and parked. Appellant got out of the car, and "appeared to be cocking something." Addison then got out of the car and the two men started running back towards Darnell's house. As they approached Darnell's street, appellant mistakenly yelled "Darnell" to Roland Chapman (Chapman), Darnell's father. Chapman replied: "What?"[1] Appellant and Addison then began to chase Chapman through a parking lot and field. While Chapman was being chased by the two men, he heard two gunshots fired at him. Chapman ran until he came upon Officer Mackey, who was sitting in his police cruiser. Chapman jumped into the police car, ducked down towards the floor boards and told Officer Mackey that "people were shooting at [him]."

Officer Mackey returned with Chapman to the road adjacent to the Chapman house, where he found appellant walking down one side of the road directly across from Brian Brown, who was walking down the other side. They were heading in the direction of the Chapman house. Both men were arrested. Addison was nowhere to be found.

---

[1] The area where Chapman was standing during this exchange was not well lit, and Chapman physically resembles his son, Darnell.

At the time of his arrest, Brown was wearing a trench coat, the pocket of which contained two shotgun shells. Appellant and Brown were transported from the scene at approximately 3:15 a.m. At 6:30 a.m., as the sun began to rise, the police recovered the loaded, double-barrelled, sawed-off shotgun in some tall grass at the spot where Brown had been walking when he was stopped by Officer Mackey. Appellant admitted that he knew Brown had the shotgun and that he asked Brown to walk with him down the street.

## SUFFICIENCY OF THE EVIDENCE

Appellant argues "that he neither possessed or used a sawed-off shotgun in the perpetration of the crime of attempted murder or any other crime of violence." We must decide whether the evidence was sufficient for the jury to have found that a sawed-off shotgun was used in the attempted murder of Chapman, and whether the Commonwealth was required to prove actual or constructive possession of the sawed-off shotgun by appellant to support a conviction under Code § 18.2-300.

> When considering the sufficiency of the evidence on appeal of a criminal conviction, we must view all the evidence in the light most favorable to the Commonwealth and accord to the evidence all reasonable inferences fairly deducible therefrom. The jury's verdict will not be disturbed on appeal unless it is plainly wrong or without evidence to support it.

*Traverso v. Commonwealth,* 6 Va. App. 172, 176, 366 S.E.2d 719, 721 (1988) (citations omitted). "The jury was entitled to consider all the evidence in determining whether the Commonwealth had proved all the elements for each [offense] charge[d]." *Carter v. Commonwealth,* 16 Va. App. 118, 129, 428 S.E.2d 34, 43 (1993). Accordingly, the jury could properly consider the evidence of conspiracy to commit murder in determining whether a sawed-off shotgun was in fact used in the commission of the attempted murder of Chapman.

The evidence shows that appellant and others conspired to kill Darnell. Brown was chosen to shoot Darnell with the sawed-off shotgun because he was the only male present that "had no charges." Appellant and his companions discussed all of the plans for the killing in appellant's home. The sawed-off shotgun that was to be used to shoot Darnell was obtained from a room in appellant's home and was taken to Williamstown. There is no evidence that any other weapon was discussed, available or used in the subsequent attempted murder

of Chapman. In addition, appellant and Addison purchased ammunition for the shotgun, and Addison placed the weapon under the hood of the Chevrolet before that vehicle left for Darnell's neighborhood. The evidence proves that appellant and Addison chased Chapman, mistaking him for his son, Darnell, and that during this chase two shots were fired at Chapman. The only weapon that was recovered by the police was the sawed-off shotgun obtained from appellant's home. Further, the only ammunition recovered were shotgun shells. From this evidence, the jury could properly have found beyond a reasonable doubt that the sawed-off shotgun was the weapon used in the attempted murder of Chapman.

## POSSESSION OR USE OF A SAWED-OFF SHOTGUN

Appellant argues that he never possessed or used the sawed-off shotgun and that the only time the sawed-off shotgun was carried by Brown was after the attempted murder of Chapman. Code § 18.2-300(A) provides:

> Possession or use of a "sawed-off" shotgun or "sawed-off" rifle in the perpetration or attempted perpetration of a crime of violence is a Class 2 felony.

A "crime of violence" as used in Code § 18.2-300(A) is defined as follows:

> "Crime of violence" applies to and includes any of the following crimes or an attempt to commit any of the same, namely, murder, manslaughter, kidnapping, rape, mayhem, assault with intent to maim, disable, disfigure or kill, robbery, burglary, housebreaking, breaking and entering and larceny.

Code § 18.2-299.

The evidence proves that appellant was one of two men who chased Chapman and fired upon him with the intent to kill. While appellant and his co-conspirators actually intended to kill Darnell, Chapman's son, appellant mistakenly believed that Chapman was in fact Darnell during the pursuit. Accordingly, when the two men fired upon Chapman with the intent to kill Darnell, their murderous intent was transferred to the killing of Chapman. "Under this concept, if an accused shoots at another intending to kill him, and a third person is killed because of the act, that same intent follows the bullet and is transferred to the killing of the third person, even if such death was

accidental or unintentional." *Riddick v. Commonwealth,* 226 Va. 244, 248, 308 S.E.2d 117, 119 (1983).

As previously stated, the evidence supports the conclusion that the sawed-off shotgun was used in the commission of this offense. Further, Chapman testified that he observed appellant "cocking something" as appellant exited the Nissan Maxima and began to run towards him. From this evidence, the jury could properly have found beyond a reasonable doubt that appellant had actual possession of the sawed-off shotgun during the commission of the attempted murder of Chapman, and the jury was entitled to discard any evidence in conflict with this finding.

■ At the very least, the evidence proves that appellant was acting in concert with Addison when the two men chased and fired upon Chapman. If Addison was the shooter, appellant is deemed to have shared Addison's intent to kill because their conduct was in concert. *See Epps v. Commonwealth,* 216 Va. 150, 156, 216 S.E.2d 64, 69 (1975). "Thus, even if [Addison] [fired upon] the victim, [appellant] was criminally responsible for the acts of the gunman, [Addison], as a principal in the second degree." *Riddick,* 226 Va. at 248, 308 S.E.2d at 119 (citations omitted). "And every principal in the second degree may be indicted, tried, convicted, and punished, with certain exceptions not applicable here, as if a principal in the first degree."[2] *Id.*

Even if appellant never held the sawed-off shotgun, which is contrary to the evidence before us, he could still be properly convicted of possession or use of a sawed-off shotgun in the attempted perpetration of murder in violation of Code § 18.2-300(A). Because Addison and appellant shared the common intent to kill:

they shared the common intent to commit all of the elements of [murder], including the use of such force [or] violence . . . as would be expedient for the accomplishment of their purpose. An incidental probable consequence of such a shared intent was the use of a weapon, including a firearm if one should be at hand. In

---

[2] Code § 18.2-18 provides:

In the case of every felony, every principal in the second degree and every accessory before the fact may be indicted, tried, convicted and punished in all respects as if a principal in the first degree; provided, however, that except in the case of a killing for hire under the provisions of subdivision 2 of § 18.2-31 an accessory before the fact or principal in the second degree to a capital murder shall be indicted, tried, convicted and punished as though the offense were murder in the first degree.

such circumstances, the law is well settled in Virginia that each co-actor is responsible for the acts of the others, and may not interpose his personal lack of intent as a defense.

*Carter v. Commonwealth*, 232 Va. 122, 126, 348 S.E.2d 265, 267-68 (1986) (imposing vicarious criminal responsibility for use of a firearm by another); *see also Cortner v. Commonwealth*, 222 Va. 557, 281 S.E.2d 908 (1981) (holding unarmed co-defendant guilty for "use" of a firearm during the commission of robbery and abduction).

For the reasons set forth above, we find that sufficient evidence was presented from which the jury could have found beyond a reasonable doubt that a sawed-off shotgun was used in the attempted murder of Chapman and that appellant "used" or "possessed" the sawed-off shotgun during the commission of this violent crime. Accordingly, we affirm the judgment.

*Affirmed.*

Moon, C.J., and Duff, J.,* concurred.

---

*Judge Charles H. Duff was appointed Senior Judge effective July 1, 1993, pursuant to Code § 17-116.01:1.