COURT OF APPEALS OF VIRGINIA


Present:  Judges Benton, Annunziata and Overton
Argued at Norfolk, Virginia


JERMAINE L. BELL
                                    MEMORANDUM OPINION[*] BY
v.          Record No. 2967-97-1    JUDGE NELSON T. OVERTON
                                       JANUARY 26, 1999
COMMONWEALTH OF VIRGINIA


              FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
                      Junius P. Fulton, III, Judge

              James O. Broccoletti (Zoby & Broccoletti,
              P.C., on brief), for appellant.

              Robert H. Anderson, III, Assistant Attorney
              General (Mark L. Earley, Attorney General, on
              brief), for appellee.


      Jermaine L. Bell (defendant) appeals his convictions for

first-degree murder and use of a firearm in the commission of a

felony.  He contends that the evidence was insufficient to

support his convictions because the killer, with whom defendant

acted in concert to perpetrate the crime, did not have the

specific intent to commit murder.  Because we hold that the

evidence was sufficient to show the requisite intent, we affirm.

      When the sufficiency of the evidence is challenged on

appeal, we review the evidence in the light most favorable to the

Commonwealth and grant to it all reasonable inferences fairly

deducible therefrom.  See Higginbotham v. Commonwealth, 216 Va.

349, 352, 218 S.E.2d 534, 537 (1975).  We may not disturb the

---

      [*]Pursuant to Code § 17.1-413, recodifying Code § 17-116.010,
this opinion is not designated for publication.

convictions unless they are plainly wrong or unsupported by the evidence. See Traverso v. Commonwealth, 6 Va. App. 172, 176, 366 S.E.2d 719, 721 (1988). So viewed, the evidence established that on the morning of April 1, 1996, Cecil Manley was moving some property belonging to Nakeesha Locker out of her apartment on 320 South Main Street in Norfolk, Virginia. Locker's apartment was near the corner of South Main and Hough Street. An alley ran behind the houses facing Hough Street and separated them from houses facing Bellamy Street, which runs parallel to Hough Street and perpendicular to South Main Street.

As Manley drove to Locker's apartment that morning, he noticed defendant driving by in defendant's vehicle. After Manley had reached the apartment and began to move boxes into a van, Manley saw defendant drive down South Main Street and turn onto Bellamy Street. Manley noted that defendant had two passengers in his car. The passengers were Ronald Cooke and Darrell Smith, and all three men were armed with a variety of weapons including a shotgun, an automatic rifle and a handgun.

At about noon, Manley saw defendant, Cooke and Smith in the alley behind the apartment building in which he was working. When Manley spotted them, the three men walked up the alley and began firing their weapons at Manley. Manley dropped the box he was carrying and ran around the apartment building in the direction of Hough Street. He found an abandoned house on Hough Street and crawled under it. Manley could hear gunfire for

several more minutes, then he heard a woman screaming "my baby." When he heard sirens he emerged from the building and talked to the police.

After Manley had fled, defendant and Cooke returned to defendant's car and picked up Smith. They all drove down Bellamy Street, towards South Main Street, at least once, and possibly several times. During one pass, the front seat passenger leaned out of his window with an automatic weapon. He aimed across the roof of the car and fired a series of shots at a 45-degree angle to the car in the direction of Hough Street and the back of Locker's apartment. The man hanging out the window had long, dreadlocked hair, which fit the description of Ronald Cooke.

Taylor Ricks lived at 120 Hough Street, about a block from Locker's apartment. She was in an upper bedroom of her home during the shooting. After the shooting stopped, Taylor's mother and cousin found Taylor face down on her bed, bleeding. A medical examiner testified that one bullet entered Taylor's wrist, exited the back of her hand, re-entered her body through her cheek and exited the back of her neck. The examiner opined that, due to the size and probable velocity of the bullet, it was fired from a rifle. Taylor was taken by paramedics to a local hospital and was pronounced dead on arrival.

Defendant admits he acted in concert with Cooke and Smith in an attempt to kill Cecil Manley and, thus, "may be held accountable for incidental crimes committed by another

- 3 -

participant during the enterprise even though not originally or specifically designed." Berkeley v. Commonwealth, 19 Va. App. 279, 283, 451 S.E.2d 41, 43 (1994). He also concedes that if Ronald Cooke, the person who fired the fatal shot, had the specific intent to kill Manley, then the transferred intent doctrine would result in defendant's culpability for first-degree murder and use of a firearm in the commission of that murder. See Henderson v. Commonwealth, 17 Va. App. 444, 449-50, 438 S.E.2d 292, 295 (1993) (citing Riddick v. Commonwealth, 226 Va. 244, 248, 308 S.E.2d 117, 119 (1983)). The narrow question before us is whether the evidence was sufficient to support the trial court's conclusion that Cooke maintained the specific intent to kill Manley when he shot Taylor Ricks.

"'Intent is the purpose formed in a person's mind and may be, and frequently is, shown by circumstances. It is a state of mind which may be proved by a person's conduct or by his statements.'" Haywood v. Commonwealth, 20 Va. App. 562, 565, 458 S.E.2d 606, 608 (1995) (quoting Barrett v. Commonwealth, 210 Va. 153, 156, 169 S.E.2d 449, 451 (1969)). "[W]hether the required intent exists is generally a question for the trier of fact." Nobles v. Commonwealth, 218 Va. 548, 551, 238 S.E.2d 808, 810 (1977).

We hold the trial court's finding, that Cooke's conduct evinced an intent to murder Manley when he shot Taylor Ricks, is supported by the record. The attack upon Manley had subsided not

- 4 -

minutes before defendant and his friends entered his car to resume the search for Manley. They drove around the block shooting at areas where Manley could have been hiding. The shot which killed Taylor was fired in the direction they had last seen Manley, near the area of their initial assault. These actions exhibited not mindless violence, but a systematic attempt to find and kill Manley. The facts support the trial judge's conclusion that "[e]very bullet that was fired out there was meant for Cecil Manley."

We hold that the evidence was sufficient to support defendant's convictions for first-degree murder and use of a firearm in the commission of a felony. Accordingly, the convictions are affirmed.

Affirmed.
