COURT OF APPEALS OF VIRGINIA


Present:   Judges Benton, Clements and Beales
Argued at Richmond, Virginia


XAVIER ANTONIO POWELL

MEMORANDUM OPINION* BY
v.        Record No. 1942-05-2                 JUDGE RANDOLPH A. BEALES
                                               NOVEMBER 28, 2006
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF HENRICO COUNTY
Daniel T. Balfour, Judge

Matthew T. Witten for appellant.

Josephine F. Whalen, Assistant Attorney General (Robert F.
McDonnell, Attorney General, on brief), for appellee.


Xavier Antonio Powell (appellant) appeals from his conviction by the trial court of

malicious wounding, aggravated malicious wounding, and use of a firearm in the commission of

a felony under Code §§ 18.2-51, 18.2-51.2, and 18.2-53.1, respectively.  The sole issue on appeal

is whether the evidence is sufficient, as a matter of law, to support appellant's convictions.  We

hold that it is and affirm the convictions.

I.

FACTS

Under well-settled principles, "'we review the evidence in the light most favorable to the

Commonwealth, granting to it all reasonable inferences fairly deducible therefrom.'"  Peake v.

Commonwealth, 46 Va. App. 35, 37-38, 614 S.E.2d 672, 674 (2005) (quoting Archer v.

Commonwealth, 26 Va. App. 1, 11, 492 S.E.2d 826, 831 (1997)).  So viewed, the evidence

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

establishes that, just after dusk on October 22, 2004, a black Jeep Liberty drove by a crowd assembled in the 2000 block of Beck Drive to attend a football game at Kennedy High School. The Jeep continued circling the block for approximately fifteen minutes. Finally, the Jeep slowed to within twenty-five feet of the crowd, and the occupants of the vehicle sprayed the group with gunfire.

Although none of the witnesses were able to see the individuals inside the vehicle, Greg Knight testified he saw "many shots" from "three different guns" being fired from the Jeep's windows, including from the driver's window. Dominic Jones, who was grazed in the head by a bullet, saw flashes of gunfire coming from both the driver's window and the rear window on the driver's side of the Jeep. Michael Bowman, who was shot in his lower back, resulting in paralysis from the waist down, testified he was shot when he turned away from the Jeep to run. None of the witnesses saw shots being fired from any source other than the Jeep.

The police received a call about the shooting at 7:46 p.m. Later that night, the Jeep was found by police at a Citgo gas station approximately a mile from the scene of the shooting. The Jeep had two flat front tires and several bullet holes in the body.

The Jeep belonged to the husband of Kelly White. White testified that, earlier that afternoon, she drove the Jeep into the Fulton Bottom area to buy crack cocaine. She had no money but hoped to trade CDs and DVDs for drugs. She approached appellant, David Eaton, and Ike Enny, but they were not interested in trading drugs for CDs and DVDs. Instead, they offered to give White cocaine in exchange for the use of her Jeep. White initially rejected the offer and drove off. However, she later returned and agreed to let the men use the Jeep for a while in exchange for the cocaine. The men got into the Jeep and rode with her to the house of Rodney Friend, an acquaintance of the men. White stayed at the house and smoked crack with

Friend while appellant, Eaton, and Enny used the Jeep. White observed that appellant was driving the Jeep when the three men drove away from Friend's house.

Appellant, Eaton, and Enny returned to Friend's house "before eight o'clock" without the Jeep. Eaton asked White if she "had any enemies" because "somebody had shot out both of [her] tires on the [Jeep]." The men asked White "where the jack was in the [Jeep], because they wanted to change the tire[s] and bring the car back to [her]." White told them where the jack was located in the vehicle, and the men left. The men did not return the Jeep, and White "never saw them after that time."

White waited at Friend's house all night, hoping appellant and his cohorts would return her husband's Jeep. The next morning, she called home and learned what had happened to the Jeep. She subsequently went to the police and told them what she had done.

Investigator Robin Dorton interviewed White and rode with her to Fulton Bottom in an attempt to locate the men who had borrowed the Jeep. As a result of that investigation, Enny was taken into custody.[1] During further investigation, White identified Eaton and appellant from a group of photographs as the other two men to whom she had loaned her husband's Jeep.

The forensic investigator, Jennifer Strano, collected approximately nineteen cartridge casings, including nine-millimeter and .22 caliber rounds, in the street at the scene of the shooting. These casings matched cartridge casings found in and around the Jeep at the Citgo station. She also found some nine-millimeter shells at the Beck Drive scene that did not match ones found with the Jeep. Strano testified that, "all in all," the casings found at the scene of the shooting and in and around the Jeep at the Citgo station came from "three firearms."

---

[1] Investigator Dorton testified that Enny initially told him there were "only three people" in the Jeep on the night of the shooting, but "changed his story" following his arrest, "saying that he wasn't in the vehicle [and] that there might have been a fourth person in the vehicle."

The trial court found appellant guilty and specifically noted:

> The evidence is pretty clear to me that they would not have gotten three other people in there and gotten back out and reported to the police at 7:46. The evidence from the forensic, I think confirms what I said. I believe the evidence, to me, proved beyond a reasonable doubt, when she testified. I don't think there was any evidence that it's a practice, as someone said, to borrow a car and switch it off to somebody else and then switch it back and then show up. There wasn't any evidence that, in effect, that's a practice and there certainly wasn't any evidence that was the case here. That's just a theory thrown out. So in my mind, it's not a question beyond a reasonable doubt. I think that they're all guilty and I so find.

The court sentenced appellant to thirty-three years' incarceration, with sixteen years suspended, and ordered appellant to pay $2,480 in court costs. This appeal followed.

## II.

## ANALYSIS

On appeal, appellant contends the evidence, which was entirely circumstantial, was insufficient, as a matter of law, to support his convictions. Specifically, he argues the Commonwealth's evidence failed to prove beyond a reasonable doubt that he was involved in the shooting. We disagree.

"'When the sufficiency of the evidence is challenged on appeal, we determine whether the evidence, viewed in the light most favorable to the prevailing party, the Commonwealth, and the reasonable inferences fairly deducible from that evidence support each and every element of the charged offense.'" Crest v. Commonwealth, 40 Va. App. 165, 174, 578 S.E.2d 88, 92 (2003) (quoting Haskins v. Commonwealth, 31 Va. App. 145, 149-50, 521 S.E.2d 777, 779 (1999)). "[T]he judgment of a trial court sitting without a jury is entitled to the same weight as a jury verdict." Coles v. Commonwealth, 270 Va. 585, 587, 621 S.E.2d 109, 110 (2005), cert. denied, 2006 U.S. LEXIS 7857 (Oct. 16, 2006). "When a defendant challenges on appeal the sufficiency of the evidence to sustain his conviction, the appellate court has the duty to examine the evidence

- 4 -

that tends to support it, and to affirm the conviction unless it is plainly wrong or without evidentiary support." Id. Moreover, "[t]he credibility of the witnesses and the weight accorded the evidence are matters solely for the fact finder who has the opportunity to see and hear that evidence as it is presented." Ford v. Commonwealth, 48 Va. App. 262, 267, 630 S.E.2d 332, 335 (2006) (quoting Sandoval v. Commonwealth, 20 Va. App. 133, 138, 455 S.E.2d 730, 732 (1995)).

"Circumstantial evidence is as competent and is entitled to as much weight as direct evidence, provided it is sufficiently convincing to exclude every reasonable hypothesis except that of guilt." Coleman v. Commonwealth, 226 Va. 31, 53, 307 S.E.2d 864, 876 (1983). Indeed, as our Supreme Court recently held:

> There is no distinction in the law between the weight or value to be given to either direct or circumstantial evidence. The finder of fact is entitled to consider all the evidence, without distinction, in reaching its determination. Circumstantial evidence is not viewed in isolation. While no single piece of evidence may be sufficient, the combined force of many concurrent and related circumstances, each insufficient in itself, may lead a reasonable mind irresistibly to a conclusion.

Muhammad v. Commonwealth, 269 Va. 451, 479, 619 S.E.2d 16, 31-32 (2005) (citation omitted), cert. denied, 126 S. Ct. 2035 (2006). In considering an appellant's alternate hypothesis of innocence in a circumstantial evidence case, we must determine "not whether there is some evidence to support" the hypothesis of innocence, but, rather, "whether a reasonable [fact finder], upon consideration of all the evidence, could have rejected [the appellant's] theories in his defense and found him guilty of [the charged crime] beyond a reasonable doubt." Commonwealth v. Hudson, 265 Va. 505, 513, 578 S.E.2d 781, 785 (2003) (internal quotation marks omitted).

Here, the trial judge found appellant guilty based on the totality of the evidence. The evidence, taken in the light most favorable to the Commonwealth, supports that finding. The

evidence establishes that the Jeep belonging to White's husband was the vehicle used in the drive-by shooting on Beck Drive. The abandoned and bullet-ridden Jeep was found a mile from the shooting. Shell casings from the same guns used on Beck Drive were found in and around the Jeep.

Moreover, White testified that, hours before the shooting occurred, she loaned the Jeep to appellant, Eaton, and Enny in exchange for drugs. She specifically identified appellant as the driver when he, Eaton, and Enny left Friend's home in the Jeep. A witness to the shooting testified that he saw flashes from three different guns being fired out of the Jeep's windows, including from the driver's window. In addition, based on the ballistics testimony, at least three guns were used at the shooting, and casings from at least two of those same guns were found in and around the abandoned Jeep. The shooting, which was reported to the police at 7:46 p.m., occurred before appellant, Eaton, and Enny returned to Friend's house before 8:00 p.m. to report the Jeep had been damaged by gunfire and they were going to change the tires before returning it to White.

From this evidence, the trial judge could properly conclude that appellant was in the Jeep and participated in the drive-by shooting on Beck Drive.[2] Likewise, the trial judge could properly reject appellant's hypothesis of innocence that another group of men gained possession of the Jeep, drove it to Beck Drive, perpetrated the shooting, and abandoned the Jeep at the Citgo station before appellant and his friends returned to Friend's house. As the trial judge found, "[t]here wasn't any evidence that, in effect, that's a practice and there certainly wasn't any

---

[2] Though Strano's testimony and the cartridge casings confirm that three weapons were fired from the Jeep into the crowd, the evidence need not prove that appellant actually shot from the vehicle, only that he acted as a principal in the second degree. See Riddick v. Commonwealth, 226 Va. 244, 248, 308 S.E.2d 117, 119 (1983) (holding that, under the concert of action theory, even if the appellant himself did not shoot the victims, the appellant "shared [his cohort's] intent" and was "criminally responsible for the acts of the gunman . . . as a principal in the second degree"). In addition, whether two or three guns were used is likewise not significant to this analysis.

evidence that was the case here." Indeed, the short window of opportunity between when the shooting occurred and when appellant and his cohorts returned to Friend's house makes appellant's hypothesis of innocence implausible, as the trial judge found.

Finally, we note that "a reviewing court does not 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" Myers v. Commonwealth, 43 Va. App. 113, 118, 596 S.E.2d 536, 538 (2004) (quoting Crowder v. Commonwealth, 41 Va. App. 658, 662-63, 588 S.E.2d 384, 386-87 (2003)). Instead, we ask whether "'*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Kelly v. Commonwealth, 41 Va. App. 250, 257, 584 S.E.2d 444, 447 (2003) (*en banc*) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)). With this in mind, we hold that the trial court did not err in finding appellant guilty under Code §§ 18.2-51, 18.2-51.2, and 18.2-53.1, as the convictions are not plainly wrong or without evidentiary support.

III.

CONCLUSION

Because, when viewed in the light most favorable to the Commonwealth, the evidence and reasonable inferences to be drawn from that evidence are sufficient, as a matter of law, to support appellant's convictions, we affirm the judgment of the trial judge and appellant's convictions.

Affirmed.