COURT OF APPEALS OF VIRGINIA


Present:  Judges Willis, Lemons and Frank
Argued by teleconference


WAYNE R. MARSHALL

MEMORANDUM OPINION[*] BY
v.    Record No. 0363-99-1            JUDGE DONALD W. LEMONS
                                          MARCH 14, 2000
COMMONWEALTH OF VIRGINIA


          FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
                    H. Thomas Padrick, Jr., Judge

              John D. Hooker, Jr. (Hooker & Migliozzi,
              P.C., on brief), for appellant.

              Kathleen B. Martin, Assistant Attorney
              General (Mark L. Earley, Attorney General, on
              brief), for appellee.


     Wayne R. Marshall appeals his convictions for unlawful

wounding of Ashanti Brown and unlawful wounding of Mishelene

Minott.  On appeal, he argues (1) that the trial court erred by

granting the Commonwealth's instruction on transferred intent

and (2) that the trial court erred by denying his motions to

strike the Commonwealth's evidence and set aside the jury's

verdict because of insufficient evidence.  We hold that the

court's instruction on transferred intent was not erroneously

given with respect to the unlawful wounding of Minott and that

        * Pursuant to Code § 17.1-413, recodifying Code
§ 17-116.010, this opinion is not designated for publication.

the evidence was sufficient to sustain the verdict.  However, we find the evidence insufficient to sustain the verdict of unlawfully wounding Ashanti Brown.

## I.   BACKGROUND

On November 28, 1997, Nathaniel Brown ("Brown") and Lemar Anderson were waiting at Brown's home for Ricardo Minott ("Ricardo").  Brown and Ricardo were planning to go to a car stereo store.  From her bedroom, Brown's girlfriend Mishelene Minott ("Minott") heard him leave the house.  Shortly thereafter, Minott heard the downstairs door re-open and close.  She recognized the voices of Brown and Anderson and heard a third voice that she assumed was Ricardo, her sixteen-year-old brother.

After a few minutes, Rishaad Floyd came into Minott's bedroom with a gun in his hand and told her "This is an F---ing stick-up."  He then asked where the safe was kept, and Minott told him that it was in Brown's closet.[1]  Floyd took "bundles of money" from the unlocked safe and ordered Minott downstairs.  Minott and her five-month-old daughter, Ashanti, were forced to go into the living room.  Minott saw Marshall holding a gun and standing near Brown, who was laying on his stomach with his

---

[1] Brown was allegedly a drug dealer who kept large amounts of money in a safe in his house.

-

hands taped behind his back.  Minott was forced to lie down next to Brown and she placed Ashanti nearby on the floor.  Marshall put tape over Brown's mouth and then taped Minott's hands to her face, over her mouth and nose.  Marshall yelled at Brown, repeatedly kicking him in the head and back while he lay tied up on the floor.  Meanwhile, Minott heard Floyd and Anderson searching the upstairs rooms of the house.  Ricardo eventually arrived and was made to lie on the living room floor where Marshall kicked and "pistol-whipped" him.

Floyd and Anderson came back downstairs and asked where the guns and the "weed" could be found.  Brown shook his head indicating that there were no drugs or guns in the house.  Floyd and Anderson went into the kitchen, and Floyd returned with a knife.  Floyd told Brown that "[t]his was [his] last day walking the earth," and then announced to the group, "You're all going to die-all of you."

Anderson came from the kitchen with plastic bags and told Minott and Ricardo to put the bags over their heads.  Minott testified that she heard Brown plead for the lives of Minott and Ashanti.  She then heard Brown "yelling, screaming in pain." Minott heard Floyd repeatedly say, "Oh, you feel it.  I got you good.  You're gonna die.  You're dying."  Brown eventually stopped yelling.  Minott, who was lying face down, then heard some shots and felt her arm go numb.

-

Floyd, Anderson and Marshall fled.  Minott stood up, took the bag off of her head and attempted to call for help.  All of the phones were missing, however, so she and her brother went to a neighbor's for help.  The neighbor was not there, and she returned to her house to check on Brown and Ashanti.  She pushed the emergency button on the alarm system and left her house again to check on her brother who had collapsed outside of the neighbor's house.  Their neighbor soon returned, and the police were called.  Minott returned once again to her house to check on Brown and found Ashanti sleeping with blood on her forehead and toes.  Ashanti was treated at the hospital for cuts on her forehead, scalp and thigh.  Those wounds were not present prior to the incident.  Minott was shot in the arm, and both Brown and Ricardo were beaten and shot.  Ashanti, Minott and Ricardo survived.  Brown died as a result of his wounds.

Marshall was indicted for the first degree murder of Brown, use of a firearm in the commission of a felony, two counts of abduction with intent to extort money from Brown and Minott, two counts of abduction of Ricardo and Ashanti, two counts of robbery of Brown and Minott, and three counts of malicious wounding of Minott, Ricardo and Ashanti.  Marshall was tried jointly with Anderson.  At trial, after the Commonwealth's case-in-chief, Marshall moved to strike the malicious wounding charge in which Ashanti Brown was the named victim.  He argued

-

that there was no direct evidence of how or when the injury had occurred. The Commonwealth stated that it was relying on the theory of transferred intent, and the trial court denied the motion.

Anderson moved to strike the evidence with respect to malicious wounding of Minott. He argued that mere presence is insufficient to establish that a defendant aided and abetted a principal in the commission of a crime. The court denied Anderson's motion. Marshall noted that "since you've already addressed the issues on [Anderson's] motion, I was going to have motions similar to that as far as mere presence." The court overruled Marshall's motion. Marshall renewed his motions to strike after presenting evidence on his own behalf. The court again overruled the motions.

The jury was instructed on the offense of malicious wounding and the lesser-included offense of unlawful wounding and assault and battery. Over Marshall's objection that there was no evidence to support the instructions, the court also instructed the jury that if it "believed beyond a reasonable doubt that Wayne Marshall intended to kill Nathaniel Brown, Jr., but that he wounded Ashanti Brown by mistake, then that intent is transferred to the wounding of Ashanti Brown." The jury found Marshall guilty of unlawful wounding of Ashanti and guilty of unlawful wounding of Minott. The jury also found Marshall guilty of first degree murder, use of a firearm in the

-

commission or attempted commission of murder, robbery of Brown, malicious wounding of Ricardo, abduction with intent to extort money of Brown, abduction with intent to extort money of Minott and abduction of Ricardo. He was sentenced to one hundred and thirty-five years, including one year for the unlawful wounding of Minott and one year for the unlawful wounding of Ashanti.

## II. UNLAWFUL WOUNDING OF MISHELENE MINOTT

"Both the Commonwealth and the defendant are entitled to appropriate instructions to the jury of the law applicable to each version of the case, provided such instructions are based upon the evidence adduced." Wilson v. Commonwealth, 25 Va. App. 263, 274, 487 S.E.2d 857, 863 (1997) (citation and quotation marks omitted). An instruction that is not supported by the evidence should be refused. See id. More than "a mere scintilla of evidence" is required to support a jury instruction, and the amount of evidence that satisfies that standard is determined on a case-by-case basis. Boone v. Commonwealth, 14 Va. App. 130, 132, 415 S.E.2d 250, 251 (1992); see also Brandau v. Commonwealth, 16 Va. App. 408, 411, 430 S.E.2d 563, 564 (1993).

Under the doctrine of transferred intent, "if an accused attempts to injure one person and an unintended victim is injured because of the act, the accused's intent to injure the intended victim is transferred to the injury of the unintended victim, even though this wounding was accidental or

-

unintentional."  Crawley v. Commonwealth, 25 Va. App. 768,

773-74, 492 S.E.2d 503, 505 (1997) (citations omitted).

The evidence clearly established the Commonwealth's theory
of transferred intent with respect to the wounding of Minott.
Marshall and two other men, acting in concert, forced Brown,
Ashanti, Minott and her brother Ricardo at gunpoint to lie on
the floor with their hands bound.  Floyd said they were "all
going to die, all of [them]."  Minott heard several gunshots and
felt her arm go numb.  She subsequently discovered that she had
been shot in the arm.

"Due to the concert of action, defendant is deemed to have
shared [the shooter's] intent."  Riddick v. Commonwealth, 226
Va. 244, 248, 308 S.E.2d 117, 119 (1983).  Thus, even if Floyd
or Anderson fired the shot that wounded Minott, Marshall "was
criminally responsible for the acts of the gun[men], . . . as a
principal in the second degree.  And every principal in the
second degree may be indicted, tried, convicted and punished,
with certain exceptions not applicable here, as if
a principal in the first degree."  Id. (citing Code § 18.2-18)
(other citations omitted).  Here, the intent to harm Brown was
manifested through the act of shooting a gun at him.  The
shooting resulted in the wounding of Minott.  Thus, the intent
to harm Brown was transferred to Minott.  Accordingly, we find
the evidence supported the transferred intent instruction and

-

the evidence was sufficient to sustain the conviction of unlawful wounding of Minott.

### III. UNLAWFUL WOUNDING OF ASHANTI BROWN

On appeal, when challenging the sufficiency of the evidence, we view the evidence in the light most favorable to the Commonwealth, affording to it all reasonable inferences fairly deducible therefrom. See Higginbotham v. Commonwealth, 216 Va. 349, 352, 218 S.E.2d 534, 537 (1975). The trial court's judgment will not be set aside unless it appears that it is plainly wrong or without supporting evidence. See Josephs v. Commonwealth, 10 Va. App. 87, 99, 390 S.E.2d 491, 497 (1990) (en banc).

We find no evidence in this record demonstrating any act by Marshall or his cohorts causing the glass table to break. There is no evidence that glass was heard breaking immediately after the gunshots were fired, nor is there evidence that the table was kicked over on top of the child during the ensuing melee. Furthermore, we find no evidence as to how Ashanti was injured by the glass. Without evidence of an act causing the glass table to break or evidence of an act that directly or indirectly caused the injuries to Ashanti, the intent inspiring those acts cannot be identified and, as a result, cannot be transferred to Ashanti's injuries. Consequently, the evidence was insufficient to support Marshall's conviction for the unlawful wounding of Ashanti Brown.

-

IV.  CONCLUSION

In conclusion, we affirm Marshall's conviction of unlawful wounding of Minott but reverse and dismiss the conviction for unlawful wounding of Ashanti Brown.

<u>Affirmed in part,</u>
<u>reversed and</u>
<u>dismissed in part</u>.

-