COURT OF APPEALS OF VIRGINIA

Present:   Judges Petty, Beales and Athey
Argued at Lexington, Virginia

SEAN DENZEL GUERRANT

v.        Record No. 1446-18-3

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION* BY
JUDGE RANDOLPH A. BEALES
FEBRUARY 11, 2020

FROM THE CIRCUIT COURT OF THE CITY OF ROANOKE
David B. Carson, Judge

J. Thomas Love, Jr. (Office of the Public Defender, on briefs), for
appellant.

Virginia B. Theisen, Senior Assistant Attorney General (Mark R.
Herring, Attorney General, on brief), for appellee.

Appellant Sean Denzel Guerrant was convicted of possession of a firearm after previously

being convicted of a violent felony and also convicted of possession of ammunition after previously

being convicted of a felony, both in violation of Code § 18.2-308.2.  Both convictions were based

on a single event.  On appeal, Guerrant challenges his convictions on the grounds that the evidence

was insufficient to sustain the convictions and on the grounds that the convictions violated double

jeopardy protections against multiple punishments.

I. BACKGROUND

In accordance with established principles of appellate review, we view the "evidence in the

light most favorable to the Commonwealth, as we must since it was the prevailing party in the trial

court." Riner v. Commonwealth, 268 Va. 296, 330 (2004).  "We also accord the Commonwealth

the benefit of all inferences fairly deducible from the evidence." Id. at 303.

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

William Caldwell, a security employee at First Down Sport Lounge, testified that at approximately 2:00 a.m. on June 25, 2017, after the business had closed for the evening, he saw Guerrant, accompanied by another individual, exit the establishment and go to a silver Cadillac in the parking lot. Caldwell watched Guerrant get into the car, then exit the car and come back toward the business. Caldwell testified that Guerrant was wearing a tank top shirt, and through the shirt, he "could see the outline of the handle" of a gun. As Guerrant approached, Caldwell told him, "[C]ome on it is not worth it; put it up." Guerrant returned to his vehicle a second time, but he again exited the vehicle with a gun in his hand. Caldwell testified that he again told Guerrant to return to his vehicle. Guerrant complied and returned to his vehicle, and this time Caldwell followed him. When Guerrant subsequently attempted to exit his vehicle a third time, Caldwell blocked the driver's side door with his body so that Guerrant could not exit the vehicle. Caldwell, who was unarmed, then notified the armed security personnel of the situation involving a gun.

Leon Hector, one of the armed security personnel at First Down Sport Lounge that evening, testified that upon being notified of the situation, he pulled his Glock 40 from its holster, approached Guerrant, and yelled at him to put down his weapon and get in his car. Hector testified that, as he yelled at Guerrant, Guerrant was holding a gun in his hand. Hector testified that one of the other security personnel then came over with an "AR," and Hector went and retrieved his AR and then returned with it "so now we are both pointing AR's at him." Hector testified that then both Guerrant and the individual with him entered the car and sped away. Hector also testified that, as Guerrant drove away, Guerrant pointed the gun at the security personnel.

Officer A.S. Goad of the Roanoke City Police Department testified that he was nearby the First Down Sport Lounge at approximately 2:00 a.m. on June 25, 2017, and that he received a report of a gray Cadillac that departed from the parking lot of that establishment at a high rate of speed. Shortly thereafter, he actually saw a gray Cadillac driving on the wrong side of the road at a high

rate of speed. He testified that he activated his lights and siren and began to pursue the vehicle. The Cadillac did not slow down, but instead "picked up speed," moving down the road between 70 and 80 miles per hour. He testified, "Most of the pursuit was in oncoming traffic." Officer Goad testified that, as he pursued the Cadillac, he observed an object being thrown out of the passenger side of the vehicle. Officer Goad also testified that he subsequently reviewed video footage of his pursuit of the vehicle and was able to confirm that an item was thrown out of the passenger side of the Cadillac. Officer Goad further testified that the vehicle attempted to make a left turn, "[b]ut due to the speeds it was too fast to make the turn" and "the vehicle ended up crashing into the front porch of a house." Officer Goad arrested Guerrant, who was driving the vehicle, and did not find any weapon on Guerrant's person or in the Cadillac.

Officer Peter Begley of the Roanoke Police Department testified that after Guerrant was arrested, Officer Begley retraced the route driven by Guerrant to look for any object that was thrown from the vehicle. He testified that he found a Walther PPK .380 caliber handgun lying on the double yellow line of the road Guerrant had just travelled – and that he collected the weapon. He further testified that there was no bullet in the chamber of the weapon, but the magazine which he removed from the gun contained "a mix of ammunition" including five bullets – 3 Hornady hollow point bullets, 1 ".380 full metal jacket," and 1 Winchester hollow point.

Guerrant was indicted and, after a bench trial, found guilty of the separate charges of (1) possession of a firearm after previously being convicted of a violent felony and (2) possession of ammunition after previously being convicted of a felony.

II. ANALYSIS

A. Sufficiency of the Evidence

On appeal, Guerrant challenges the sufficiency of the evidence to sustain his convictions based on two arguments. He argues that "no one saw Mr. Guerrant with ammunition for a firearm

- 3 -

and the only witnesses who saw Mr. Guerrant with a suspected firearm were civilians who did not testify regarding their ability to distinguish a firearm from an object resembling a firearm." He also argues that "the evidence does not establish the required components for ammunition as defined by Virginia Code § 18.2-308.2(D)." We address each of these arguments in turn.

When considering the sufficiency of the evidence on appeal, "a reviewing court does not 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" Crowder v. Commonwealth, 41 Va. App. 658, 663 (2003) (quoting Jackson v. Virginia, 443 U.S. 307, 318-19 (1979)). "Viewing the evidence in the light most favorable to the Commonwealth, as we must since it was the prevailing party in the trial court," Riner, 268 Va. at 330, "[w]e must instead ask whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt,'" Crowder, 41 Va. App. at 663 (quoting Kelly v. Commonwealth, 41 Va. App. 250, 257 (2003) (*en banc*)). "This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Jackson, 443 U.S. at 319.

### 1. Possession of the Firearm and Ammunition

There is ample evidence that Guerrant had a firearm in his possession. Two individuals – Caldwell, a military veteran, and Hector, an armed security guard – testified that they saw Guerrant holding a gun. Guerrant seeks to diminish or discredit their testimony because neither of them "testified regarding their familiarity with firearms or their ability to distinguish a firearm from an object resembling a firearm."

Caldwell and Hector both provided testimony from which a factfinder could reasonably conclude that they were able to identify a firearm. See Murray v. Commonwealth, 71 Va. App. 449, ___ (2020) ("Given a general constitutional right to keep and bear them, firearms are

- 4 -

generally not so exotic that it requires extensive or specialized expertise for a great many lay persons with familiarity with them to correctly identify a firearm as such."). Caldwell testified that he was a military veteran. Hector was employed as an armed guard and testified about his handling and use of multiple firearms – a Glock 40 and an "AR" – during the incident.

Furthermore, the testimony of the two security guards is not the only evidence that Guerrant possessed a firearm. Officer Goad testified that, while he was in pursuit of Guerrant, Guerrant was mostly driving on the side of oncoming traffic. During the pursuit, Officer Goad saw an object being thrown from the passenger side of the vehicle, which was corroborated by video footage admitted into evidence. Later, Officer Begley, while retracing Guerrant's route, recovered a handgun that was lying on the double yellow line in the middle of the road – which is consistent with the testimony that an object was thrown out of the passenger side of the vehicle that Guerrant was driving on the wrong side of the road into oncoming traffic. Officer Begley also testified that there was a magazine of ammunition in the gun.

Viewing all this evidence in its totality, we certainly cannot say that no rational finder of fact could conclude that Guerrant possessed the handgun along with its contents.

2. Sufficiency of the Evidence to Meet the Statutory Definition of Ammunition

Code § 18.2-308.2 makes it a crime for "any person who has been convicted of a felony" to "knowingly and intentionally possess or transport any firearm or ammunition for a firearm." Subsection (D) of that statute defines "Ammunition for a firearm" as "the combination of a cartridge, projectile, primer, or propellant designed for use in a firearm other than an antique firearm as defined in § 18.2-308.2:2."[1]

---

[1] Code § 18.2-308.2 was amended effective July 1, 2017, but subsection (D), including the language defining ammunition at issue here, was unchanged. See 2017 Va. Acts ch. 767.

Appellant argues that "the evidence does not establish the required components for ammunition as defined by Virginia Code § 18.2-308.2(D)." In Williams v. Commonwealth, 61 Va. App. 1 (2012), Williams challenged the sufficiency of the evidence to uphold his conviction for possession of ammunition by a felon where the testifying officer described the ammunition as "[t]wo complete bullets or pieces of ammunition," but admitted on cross-examination that "he could not say with one hundred percent accuracy that the bullets contained gunpowder" although he stated that "he would expect that they did have gunpowder inside them." Id. at 5 (alteration in original). Williams argued on appeal that Code § 18.2-308.2(D) "requires proof that the cartridge contains a propellant and that there is no proof of that element in this case." Id. at 6. Williams contended that, to secure a conviction under the statute, the Commonwealth must prove that the ammunition is "operable" or "'capable' of being fired." Id. at 9. This Court rejected Williams's argument, holding that the legislature's emphasis in the statute was on the *design*, not the *operability*, of the firearm or ammunition. Id. at 11.

In the case now before us, Guerrant acknowledges the holding in Williams, but argues that Williams is distinguishable because in that case there was testimony that there were two complete cartridges, while in this case, there was "no reference to the bullets being in a cartridge or the presence of either a primer or a propellant."

In Williams, the bullets were found loose in Williams's coat pocket; they were not loaded into a weapon. Therefore, some additional information was required (such as the testimony that the bullets were "[t]wo complete bullets or pieces of ammunition") to show that they met the statutory definition. In the case now before us, however, the evidence shows that the bullets were actually loaded into a magazine which was in the handgun. From the officer's descriptions of the bullets and the evidence that the bullets were in a magazine and actually loaded in the handgun, a factfinder could reasonably infer that the projectiles were in cartridges that contained primer or propellant –

*i.e.*, that the projectiles were designed for use in the handgun and for firing from the handgun in which they were loaded.

### B. Double Jeopardy

As an initial matter, the Commonwealth argues that Guerrant is procedurally barred from raising a double jeopardy argument. Briefly stated, Code § 19.2-266.2 requires that defense motions or objections asserting double jeopardy defenses be filed not later than seven days before trial or at such time that the grounds for the motion or objection arise. The statute provides that "[t]he circuit court may, however, for good cause shown and in the interest of justice, permit the motions or objections to be raised at a later time." Code § 19.2-266.2(B).

The record shows that Guerrant filed no such motion or objection before trial, but first raised his double jeopardy argument during his motion to strike the evidence at trial. There was no objection then made by the Commonwealth. The trial judge denied Guerrant's motion to strike and expressly addressed the double jeopardy as "an interesting question" but rejected the argument.

As both parties acknowledge, this Court addressed a near-identical situation in Jin v. Commonwealth, 67 Va. App. 294 (2017). The appellant in that case did not raise his double jeopardy argument until making his motion to strike. The Court held that "because the trial court considered the argument and ruled on it without objection by the Commonwealth, we will consider it sufficiently timely to preserve the issue for appeal." Id. at 303 n.2. Because, as in Jin, Guerrant articulated his double jeopardy argument to the trial court during his motion to strike, because there was no objection from the Commonwealth, and because the trial court addressed the double

jeopardy argument and rejected it, we find that Guerrant sufficiently preserved this argument for consideration on appeal.[2]

Addressing the merits of Guerrant's double jeopardy argument, "[w]e review de novo whether 'multiple punishments have been imposed for the same offense in violation of the double jeopardy clause.'" Commonwealth v. Gregg, 295 Va. 293, 296 (2018) (quoting Johnson v. Commonwealth, 292 Va. 738, 741 (2016)).

This Court recently considered the question of "whether [Code § 18.2-308.2] penalizes the simultaneous possession of firearms and of separate ammunition . . . as one offense or two." Groffel v. Commonwealth, 70 Va. App. 681, 692 (2019). In Groffel, the appellant, who had previously been convicted of a felony, was found to be in possession of a cabinet that contained "an AK-47 assault rifle, a '12-guage Winchester pump shotgun,' ammunition for the two firearms, and ammunition for a '30-30' rifle." Id. at 685. He received separate convictions for possession of a firearm and for possession of ammunition, with the trial judge noting that the "separate charge of possession of ammunition was based on ammunition that did not match the types of firearms found with it." Id. at 686. This Court found that the trial court erred in imposing separate convictions for possession of a firearm *and* possession of ammunition, holding that "Code § 18.2-308.2 does not separately penalize the appellant's possession of firearms and ammunition at the same time." Id. at 694. The Court stated, "The fact that some of the ammunition in the appellant's possession did not pair with the firearms found with it does not justify separate convictions for simultaneous

---

[2] The Commonwealth argues that rather than Jin, Williams v. Commonwealth, 57 Va. App. 750 (2011), dictates the outcome of Guerrant's double jeopardy argument. In Williams, this Court found that Williams waived his double jeopardy argument because he failed to raise it in writing before trial as required by Code § 19.2-266.2. However, even in Williams, the Court acknowledged in a parenthetical that case law "suggest[ed] that a defendant's failure to make a timely Code § 19.2-266.2 argument may not bar a defendant from raising a double jeopardy argument on appeal when the Commonwealth does not raise the timeliness issue before the trial court." Williams, 57 Va. App. at 768.

possession under the statute in question." Id. at 695. It held that "the appellant should have been subject to only one punishment under Code § 18.2-308.2 for the firearms and ammunition." Id.

The Court based its holding in Groffel on the reasoning from this Court's earlier decision in Acey v. Commonwealth, 29 Va. App. 240 (1999). In Acey, the appellant was convicted of three counts of being a felon in possession of a firearm where he possessed three firearms in one act or transaction. This Court reversed, holding that "when defendant possessed the firearms, he committed a single offense under Code § 18.2-308.2, not three." Id. at 251. The Court reasoned, "If the possession of a firearm by a felon is, of itself, the dangerous act, the number of weapons with which a felon is armed becomes irrelevant. Whether the felon bears one or one hundred firearms, the felon is 'dangerously armed.'" Id. at 250. See also Baker v. Commonwealth, 284 Va. 572, 576-78 (2012) (citing Acey with approval).

The Commonwealth acknowledges on appeal that "[u]nder Groffel, the convictions here for possession of a firearm by a violent felon and possession of ammunition for a firearm by a felon would be remanded to the circuit court for the Commonwealth to elect one of the two offenses to stand." Indeed, the reasoning in Acey and Groffel dictates the outcome here – i.e., that the separate convictions cannot both stand. If "[t]he fact that some of the ammunition in the appellant's possession did not pair with the firearms found with it does not justify separate convictions for simultaneous possession," Groffel, 70 Va. App. at 695, much less would separate convictions for possessing a firearm and possessing ammunition for that same firearm be appropriate here, where the ammunition was not only of the same caliber as the gun, but was actually loaded in the gun for which Guerrant received a conviction. As in Groffel, we hold that the trial court erred in imposing both convictions (and the sentences for each) under Code § 18.2-308.2 for simultaneous possession of a firearm and possession of ammunition because doing so is a violation of the Double Jeopardy Clause of the Constitution. See id. We remand to the circuit court to allow the Commonwealth to

- 9 -

elect only one conviction and sentence.  See Commonwealth v. Gregg, 295 Va. 293, 301 (2018); Groffel, 70 Va. App. at 695-96.

## III. CONCLUSION

Viewing the totality of the evidence – including (1) testimony by two security personnel that Guerrant was holding a gun, (2) testimony and video footage of an object being thrown out of the passenger side of the vehicle Guerrant was driving, and (3) recovery of a loaded handgun from the road along which Guerrant had just earlier driven as he was fleeing the police – we cannot say that no rational trier of fact could find that Guerrant possessed a firearm.  Furthermore, because the recovered handgun was loaded with a magazine that contained five bullets, a factfinder could reasonably infer that those projectiles described by the officer were in cartridges that contained primer or propellant, thus meeting the statutory definition of "ammunition" in Code § 18.2-308.2(D).

However, following this Court's recent decision in Groffel, we hold that it was error for the trial court to impose two convictions and sentences for simultaneous possession of a firearm and possession of ammunition because doing so is a violation of the Double Jeopardy Clause. Therefore, we remand this case to the trial court for the Commonwealth to elect only one conviction and sentence (per the Supreme Court's decision in Gregg and this Court's decision in Groffel) – and then for entry of a new sentencing order that vacates the other conviction and sentence.

Affirmed in part, and reversed and remanded in part.