# COURT OF APPEALS OF VIRGINIA

### Record No. 0783-25-3

BARRY LEE DERR

v.

COMMONWEALTH OF VIRGINIA

Present: Judges Malveaux, Athey and Frucci

Argued by videoconference

Opinion Issued May 5, 2026[*]

### FROM THE CIRCUIT COURT OF BOTETOURT COUNTY
Joel R. Branscom, Judge

Michelle C.F. Derrico (Copenhaver, Ellett & Derrico, on briefs), for appellant.

Anna Murphy Hughes, Assistant Attorney General (Jason S. Miyares,[1] Attorney General, on brief), for appellee.

### MEMORANDUM OPINION BY
### JUDGE MARY BENNETT MALVEAUX

Barry Lee Derr was convicted in a bench trial of felony eluding, in violation of Code § 46.2-817.[2] On appeal, he argues that his conviction violated the constitutional protection against double jeopardy. For the following reasons, we agree and reverse the trial court's judgment and dismiss Derr's conviction.

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] Jay C. Jones succeeded Jason S. Miyares as Attorney General on January 17, 2026.

[2] Derr also had been charged with driving without a license, in violation of Code § 46.2-300. Upon Derr's motion to strike, the trial court dismissed that charge.

## I. BACKGROUND

"We recite the facts in the light most favorable to the Commonwealth, the prevailing party below." *Williams v. Commonwealth*, 85 Va. App. 718, 726 (2025). In doing so, we also "regard as true . . . all fair inferences to be drawn" from the credible evidence. *Cappe v. Commonwealth*, 304 Va. 86, 87 (2025) (quoting *Commonwealth v. Perkins*, 295 Va. 323, 324 (2018)).

Here, the facts are undisputed.[3] On February 10, 2024, Botetourt County deputies were told to be on the lookout for a Chevrolet Equinox. The "BOLO" alert informed deputies that the Equinox was linked to Derr and that Derr was involved in narcotics sales and violent crime. The following day, deputies found the Equinox at a Botetourt County motel and began to watch the vehicle.

Officers saw Derr carry a black bag from the motel to the Equinox. Derr entered the car's front passenger seat, and a woman entered the driver's seat. In separate vehicles, two deputies followed the Equinox when it left the motel. After they saw the Equinox travel southbound in northbound lanes and correct its course by driving through a median, they stopped the vehicle for reckless driving and ordered the driver and Derr out of the vehicle. The driver got out but Derr refused to do so. After "digging around" in the black bag, Derr "jumped over the center console" to the driver's seat and drove off southbound in northbound lanes containing traffic.

Deputies followed Derr with their lights and sirens activated. In pursuit through Botetourt County, they averaged approximately 100 miles per hour and reached speeds up to 115 miles per hour. Derr failed to yield to green-lighted traffic when he passed through an intersection and, at another point, "fishtail[ed]" and "almost lost control . . . of his vehicle." When Derr did not stop, deputies pursued him into Roanoke County and then back into Botetourt County. Derr continued fleeing from Botetourt into Bedford County, at which point Bedford police joined the pursuit. The

---

[3] Appellant acknowledged at the outset of trial that he was not contesting the evidence.

- 2 -

Botetourt deputies eventually turned off their lights and sirens and followed the pursuit through Bedford "in non–emergency fashion."

While driving through Bedford County, Derr ignored a stop sign and almost collided with a pickup truck. Bedford police set up a "spike strip[]," which Derr approached at approximately 100 miles per hour. He swerved around the strip and headed "directly towards" a Bedford officer, nearly striking him before jumping over the median into the opposite lane of travel. Eventually, Bedford police succeeded in using spike strips to deflate Derr's tires. Derr continued driving on the rims, which left him unable to fully control his vehicle. Still, Derr maintained his flight from officers, frequently driving in the wrong direction and running stop signs and red lights on busy roads. The pursuit ended when a Bedford officer used his vehicle to force Derr to stop.

Derr was arrested and charged with felony eluding in both Bedford and Botetourt Counties. The Circuit Court of Bedford County accepted Derr's *Alford* plea and convicted him of felony eluding in June 2024.

In August 2024, Derr moved the Circuit Court of Botetourt County to dismiss his indictment in that county for felony eluding. He contended that because of his conviction for felony eluding in Bedford, his prosecution in Botetourt violated the double jeopardy clauses of the U.S. and Virginia Constitutions.

The trial court conducted a hearing on the motion, during which Derr argued that "[t]here was one pursuit" through multiple jurisdictions and that the "pursuit was never stopped. . . . [I]t's not a new chase, it's the same chase." Accordingly, Derr contended, his felony eluding was "continuous" and did not comprise "separate or distinct acts and therefore wouldn't form the basis for multiple convictions." The trial court took the matter under advisement and permitted the parties to brief the matter.

In a subsequent hearing, the trial court denied the motion to dismiss. The trial court found that Derr's flight from police had been "continuous from one jurisdiction to the other." But it then concluded that based on "the specific person [endangered] it could be multiple charges" and that at trial the Commonwealth potentially could prove "separate victim[s] in Botetourt than there w[ere] in Bedford." The trial court held that this possibility of proving multiple "victim[s]" would "prevent [it] from dismissing [the case] pretrial . . . on double jeopardy grounds."

The matter proceeded to trial. Following the Commonwealth's evidence, Derr moved to strike, including "renew[ing] the motion to dismiss." The trial court denied the motion with respect to felony eluding, finding that "the person or persons put in danger in Botetourt County were not the same ones [endangered] in Bedford County." Derr presented no evidence and renewed his motion to strike, which the trial court likewise denied, finding that "there are people that are different, going different directions that are put in danger by the driving" in Botetourt versus in Bedford. The trial court convicted Derr of felony eluding.

This appeal followed.

## II. ANALYSIS

Derr argues that the trial court erred in convicting him of felony eluding after he was convicted of felony eluding "for the same conduct in another jurisdiction, in violation of the prohibition against double jeopardy."

The double jeopardy clauses of the Virginia and United States Constitutions "guarantee[] protection against (1) a second prosecution for the same offense after acquittal; (2) a second prosecution for the same offense after conviction; and (3) multiple punishments for the same offense." *Commonwealth v. Gregg*, 295 Va. 293, 298 (2018) (quoting *Payne v. Commonwealth*,

- 4 -

257 Va. 216, 227 (1999)).[4]  Here, Derr asks us to consider double jeopardy in the context of the second circumstance.  "Whether there has been a double jeopardy violation presents a question of law requiring a *de novo* review."  *Hall v. Commonwealth*, 69 Va. App. 437, 444 (2018) (quoting *Fullwood v. Commonwealth*, 279 Va. 531, 539 (2010)).  But "[w]e accord '[g]reat deference' to a trial court's factual findings" and "will not set aside the factual findings of a trial court unless they are 'plainly wrong or without evidence to support [them].'"  *Farah v. Commonwealth*, 300 Va. 458, 469-70 (2022) (second and third alterations in original) (first quoting *Jones v. Eley*, 256 Va. 198, 201 (1998); and then quoting Code § 8.01-680).

Appellant was convicted in both Bedford and Botetourt Counties for felony eluding, in violation of Code § 46.2-817.  That statute provides, in pertinent part, that

> Any person who, having received a visible or audible signal from any law-enforcement officer to bring his motor vehicle to a stop, drives such motor vehicle in a willful and wanton disregard of such signal so as to interfere with or endanger the operation of the law-enforcement vehicle or endanger a person is guilty of a Class 6 felony.

Code § 46.2-817(B).  To convict a defendant for felony eluding thus requires the Commonwealth to prove that the defendant: (1) received an audible or visual signal to stop from law enforcement; (2) drove his vehicle in a wanton and willful disregard of that signal; and (3) drove his vehicle in a way that endangered or interfered with a law enforcement vehicle's operation or endangered a person.  *Jones v. Commonwealth*, 64 Va. App. 361, 367-68 (2015).  "[A] manifest purpose of the statute is to protect the public against a driver eluding police 'so as to . . . endanger a person,'" and thus "conduct that raises the specter of endangerment is the evil contemplated and proscribed by the

---

[4] *See* U.S. Const. amend. V (providing that no person "shall . . . be subject for the same offense to be twice put in jeopardy of life or limb"); Va. Const. art. 1, § 8 (providing that no person shall "be put twice in jeopardy for the same offense"); *see also Stephens v. Commonwealth*, 263 Va. 58, 62 (2002) (noting that "Virginia's constitutional guarantee against double jeopardy affords a defendant the same guarantees as the federal Double Jeopardy Clause").

statute." *Tucker v. Commonwealth*, 38 Va. App. 343, 347 (2002) (second alteration in original) (quoting Code § 46.2-817(B)).  Therefore, "[t]o require the threat to be imminent would engraft an element to the offense, thereby permitting the dangerous operation of motor vehicles until a person is actually imperiled, an absurd result that subverts the salutary purposes of the statute." *Id.*

Derr argues that he "eluded law enforcement in a single, continuous chase which crossed county lines," during which "[o]fficers never lost sight of him and never paused or terminated the chase," and that therefore his "driving was a continuous act."  Accordingly, he contends that because he "engaged in a single, uninterrupted act," the trial court "erred when it counted possible victims to separate that act into separate offenses."  We agree.

"[T]he Double Jeopardy Clause is not abridged if an accused is subjected to punishment for two offenses that are supported by separate and distinct acts." *Jin v. Commonwealth*, 67 Va. App. 294, 302-03 (2017) (quoting *Roach v. Commonwealth*, 51 Va. App. 741, 748 (2008)).  Accordingly, "where a completed offense has occurred, a separate charge may be brought for a repetition" of the unlawful conduct. *Stephens v. Commonwealth*, 35 Va. App. 141, 146 (2001), *aff'd*, 263 Va. 58 (2002).  In contrast to a completed offense, "[a] continuing offense is a continuous, unlawful act or series of acts set on foot by a single impulse and operated by an unintermittent force, however long a time it may occupy." *Hodnett v. Commonwealth*, 56 Va. App. 234, 237 (2010) (quoting *Thomas v. Commonwealth*, 38 Va. App. 319, 324 (2002)).  "In determining whether the conduct underlying the convictions is based upon the 'same act,' the particular criminal transaction must be examined to determine whether the acts are the same in terms of time, situs, victim, and the nature of the act itself." *Jin*, 67 Va. App. at 303-04 (quoting *Hall v. Commonwealth*, 14 Va. App. 892, 898 (1992) (en banc)).  Other relevant factors include the defendant's intent and the "possibility of cumulative punishment," but the "list [of factors] is not exhaustive and the [factfinder] may properly

consider . . . all the other evidence presented, in making this critical determination." *Carter v. Commonwealth*, 16 Va. App. 118, 129 (1993).

Here, the trial court found that Derr's flight from police had been "continuous from one jurisdiction to the other," and we agree. Derr began eluding police in Botetourt County, when he first received deputies' audible and visual signals to stop but nonetheless kept driving in willful and wanton disregard of those signals, and in a manner that "raise[d] the specter of endangerment" of persons on the roads. *Tucker*, 38 Va. App. at 347. Botetourt deputies continued their pursuit into Roanoke County, back into Botetourt, and ultimately into Bedford County, continuing to use their lights and sirens to signal Derr to stop and continuing to witness him driving at speeds approximating or exceeding 100 miles per hour. In Bedford County, police from that jurisdiction took over the pursuit from Botetourt deputies and eventually forced Derr to cease his flight. Thus, the entirety of Derr's conduct constituted the same act of felony eluding, rather than separate and distinct acts of felony eluding, because the conduct was unbroken and continuous through time, did not vary in its nature, and exhibited the same intent throughout—to avoid capture by police.[5]

---

[5] We note that the facts of this case are distinguishable from those of other cases in which we affirmed multiple felony eluding convictions for separate and distinct acts of eluding. *See, e.g.*, *Wilson v. Commonwealth*, No. 0435-22-3, slip op. at 5 (Va. Ct. App. Feb. 21, 2023) (finding no double jeopardy violation where the appellant was convicted of felony eluding in both Pittsylvania and Henry Counties, because when Pittsylvania deputies found and began pursuing the appellant, deputies from Henry had terminated their pursuit and no other police units were in pursuit; accordingly, "though in temporal proximity," the act of eluding in Pittsylvania "was not a continuation of [the] eluding in Henry," since the appellant's "actions in Pittsylvania County involved a new formation and implementation of purpose. . . . [He] committed two separate and distinct acts of felony eluding"); *Turner v. Commonwealth*, No. 0615-22-2, slip op. at 13 (Va. Ct. App. July 18, 2023) (finding no double jeopardy violation where the appellant was twice convicted of that offense in Lancaster County, because the officer who first pursued the appellant lost him on dark roads and "disengaged his pursuit" some minutes before other officers saw the appellant, turned on their lights and sirens, and gave chase; although the appellant "drove continuously between the two chases, his [second] failure to stop . . . was not a continuation of his [first] failure to stop" but "involved a new formation and execution of purpose"); *see also Abanda v. Commonwealth*, 81 Va. App. 354, 362 n.1 (2024) (per curiam) (noting that "[u]npublished opinions may be cited 'as informative, but will not be received as binding authority'" by our courts (quoting Rule 5A:1(f))).

But we also conclude that the trial court erred in its interpretation of Code § 46.2-817(B), by which it determined that Derr's continuous flight across jurisdictions could support multiple convictions in different jurisdictions based on different "victim[s]."[6]  In denying Derr's motion to dismiss, the trial court opined that it could not dismiss the case "on double jeopardy grounds" because at trial, the Commonwealth potentially could prove "separate victim[s] in Botetourt than there w[ere] in Bedford."  At trial, in denying Derr's initial motion to strike, the trial court found that at that stage in the proceedings the evidence supported that "the person or persons put in danger in Botetourt County were not the same ones [endangered] in Bedford County."  And when the trial court denied Derr's renewed motion to strike, the trial court held that "there are people that are different, going different directions that are put in danger by the driving" in Botetourt County versus in Bedford County.  From these statements, it is evident that the trial court erred by interpreting Code § 46.2-817(B) to permit multiple prosecutions for a single act of felony eluding based on the endangerment of multiple specific persons.  But as *Tucker* makes clear, the "purpose of the statute is to protect the public" generally from a driver eluding police in a dangerous manner and it is "conduct that raises the specter of endangerment" of the public

---

[6] In interpreting Code § 46.2-817(B), the trial court relied on this Court's unpublished decision in *Francis v. Commonwealth*, No. 1674-19-2 (Va. Ct. App. Nov. 17, 2020).  In that case, the majority affirmed the appellant's conviction for felony eluding in Dinwiddie County following his prior conviction for that offense in Chesterfield County "for the same incident." *Id.*, slip op. at 1.  Although there had been "no break in the pursuit" across multiple jurisdictions, the majority held that the eluding in Dinwiddie was "separate and distinct from" the eluding in Chesterfield because "the time and situs were different" and "there was an additional victim [in Dinwiddie], the driver of the vehicle that [the] appellant cut off." *Id.* at 2, 6.  The majority thus relied on finding a difference in "time" despite previously finding the absence of any "break in the pursuit." *Id.* at 2.  It also relied on analogies to inapposite cases involving separate acts of assault and battery and separate acts of attempted murder that involved actually imperiled, specific victims.  Ultimately, although the majority refrained from "hold[ing] . . . that every police chase that crosses jurisdictional lines would create the requisite separate acts to support more than one eluding conviction," and opined that "such a chase could be a continuing offense," it affirmed the second felony eluding conviction based on "multiple victims in different jurisdictions." *Id.* at 6-7.  While the trial court's reliance on *Francis* was understandable, we find that reliance unpersuasive, given our binding precedent in *Tucker* as discussed above.

- 8 -

that is "the evil contemplated and proscribed by the statute." 38 Va. App. at 347 (quoting Code § 46.2-817(B)). And because the proscribed evil is this generalized risk, "[t]o require the threat to be imminent would engraft an element to the offense" requiring that specific persons be "actually imperiled." *Id.* By convicting Derr for felony eluding in Botetourt on the grounds that a different "person or persons [were] put in danger" in that county than in Bedford and that different people "[were] put in danger by the driving" in Botetourt versus in Bedford, the trial court necessarily concluded that different specific persons were imminently endangered in the two jurisdictions, and thus two convictions could arise from the same act without offending Derr's protection against double jeopardy. This interpretation of the statute violated *Tucker*'s proscription against "engraft[ing] an element to the offense" beyond the element of endangering "the public" through conduct merely "rais[ing] the specter of endangerment."[7] *Id.*

Because the trial court erred in its interpretation of Code § 46.2-817(B), reading into the statute an element requiring imminent harm to an "actually imperiled" person, it erred in holding that Derr could be tried and convicted for felony eluding in Botetourt County despite his prior conviction for the same act in Bedford County. Derr's felony eluding conviction in Botetourt County therefore violated his constitutional protection against a second prosecution for the same

---

[7] We note that *Tucker*'s interpretation of the elements of felony eluding is supported by the plain language of Code § 46.2-817(B). *Tucker* makes clear that conviction under the statute requires only the creation of a generalized "specter of endangerment" to the public, and not a more narrowly drawn "imminent" threat to specific individuals. 38 Va. App. at 347. With respect to this endangerment element, the statute provides that the prohibited conduct is driving a motor vehicle in a manner that "endanger[s] a person." Code § 46.2-817(B). When interpreting statutes, "indefinite articles like 'a' refer to something . . . generally," rather than to a "particularize[d]" subject. *Blow v. Commonwealth*, ___ Va. ___, ___ (Apr. 16, 2026). *See also Phelps v. Commonwealth*, 275 Va. 139, 142 (2008) (interpreting the phrase "a person" in Code § 46.2-817(B) and noting that the "ordinary meaning of the word 'a' means 'any' or 'each,'" and that therefore the term "'a person' . . . encompasses the entire universe of people" (quoting *Webster's Third New International Dictionary* (1993))).

offense after conviction in Bedford County.  Accordingly, we reverse and dismiss that conviction.

## III.  CONCLUSION

For the foregoing reasons, we reverse the trial court's judgment and dismiss Derr's conviction for felony eluding, in violation of Code § 46.2-817(B).

*Reversed and dismissed.*